In re OSTEOPATHIC MEDICAL
CENTER OF TEXAS.

No. 2–00–050–CV.

Court of Appeals of Texas,
Fort Worth.

April 20, 2000.

882

Goodman, Odom, Lacy, Floyd & Midgley, L.L.P.., Lane, Odom, Jeffrey A. Lacy, Fort Worth, for appellant.

Jim Claunch, Kirk Claunch, Forth Worth, for appellee.

PANEL A: DAY, RICHARDS, and GARDNER, JJ.

## OPINION

SAM J. DAY, Justice.

We withdraw our opinion and judgment of April 6, 2000 and substitute the following opinion.

## INTRODUCTION

Relator Osteopathic Medical Center of Texas (the "Hospital") seeks mandamus relief from the trial court's order compelling disclosure of two documents that it claims are excluded from discovery by the medical peer review privilege. After examining the documents in question, we find the Hospital has adequately proved, by affidavit, that one of the two documents is a privileged medical peer review document. Accordingly, we conditionally grant the petition for writ of mandamus in part and deny it in part.

## BACKGROUND

This case involves a slip-and-fall. Maxine Erickson fell in the bathroom at the SMART Institute, a physical therapy rehabilitation facility operated by the Hospital and the University of North Texas Health Science Center, and staffed by Richards Healthcare, Inc. As a result of her injuries, the Ericksons brought the underlying premises liability case. The Ericksons served the Hospital with a second request for production of documents seeking disclosure of the following items:

*REQUEST FOR PRODUCTION NO. 1*: Any and all accident reports in the possession of Osteopathic Medical Center of Texas regarding the accident which is the basis of this lawsuit to include those created by entities other than Osteopathic Medical Center of Texas. This request does not include any accident reports that were created after the filing of this lawsuit.

*REQUEST FOR PRODUCTION NO. 2*: Any and all documents or notes in the possession of Osteopathic Medical Center of Texas regarding any investigation of the accident which is the basis of this lawsuit to include those created by entities other than Osteopathic Medical Center of Texas. This request for production does not include any documentation or notes created after the filing of this lawsuit.

The Hospital objected to disclosure of any such documents on the basis of medical peer review committee privilege. Thereafter, the Ericksons filed a motion to compel discovery of the documents asserting that the privilege was inapplicable. In response to the motion, the Hospital filed the affidavit of Dr. Bryce Beyer in support of its privilege claim.

The trial court held a hearing on the motion to compel on January 7, 2000, at which time the Hospital tendered the documents to the trial court for in camera inspection. Overruling the Hospital's peer review objections, the trial court granted the Ericksons' motion to compel, in part, and ordered the Hospital to produce (1) the Patient Quality Event Tracking Report, and (2) the Security Services Incident Report. The Hospital seeks relief from this order.

## DISCUSSION

 Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by ordinary appeal. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding); *Walker v. Packer*, 827 S.W.2d 833, 840–42 (Tex.1992) (orig.proceeding); *Arlington Mem'l Hosp. Found., Inc. v. Barton*, 952 S.W.2d 927, 929 (Tex.App.—Fort Worth 1997, orig. proceeding). A party does not have an adequate remedy by appeal when an appellate court cannot cure the trial court's erroneous discovery order. *See Arlington Mem'l*, 952 S.W.2d at 929. An appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially affects the rights of the aggrieved party. *See Walker*, 827 S.W.2d at 840; *Arlington Mem'l*, 952 S.W.2d at 929. Thus, the Hospital is entitled to mandamus relief in this instance if the trial court abused its discretion in compelling production of privileged documents.

 The essence of the medical peer review privilege is that documents made

by or for a medical committee or medical peer review committee are confidential and privileged from discovery unless they are made in the regular course of business or the privilege has been waived.[1] *See* TEX. OCC.CODE ANN. § 160.007(a), (e) (Vernon 2000); TEX. HEALTH & SAFETY CODE ANN. § 161.032(a), (c) (Vernon Supp.2000); *Arlington Mem'l*, 952 S.W.2d at 929. The nature and extent of the medical peer review privilege is a question of law. *See Brownwood Reg'l Hosp. v. Eleventh Court of Appeals*, 927 S.W.2d 24, 27 (Tex.1996) (orig.proceeding). The burden to establish the privilege is on the party seeking to preclude documents from discovery on this basis. *See Arlington Mem'l*, 952 S.W.2d at 929. To that end, the party has the obligation to prove, by competent evidence, that the privilege applies to the information sought. *See id.* This is generally accomplished by affidavit. An affidavit filed as proof of the privilege must necessarily be descriptive enough to be persuasive. *See id.*

■ A review of the documents at issue indicates that both documents are pre-printed forms of the Hospital and were completed immediately after or shortly after Ms. Erickson's fall. The Patient Quality Event Tracking Report shows the time and location of the occurrence, the patient's pre-occurrence condition, the nature of the occurrence, the post-occurrence treatment, witnesses to the occurrence, and a description of the incident or occurrence. This document specifically provides it is "FOR USE BY THE QUALITY ASSURANCE COMMITTEE."

The Security Services Incident Report is marked "Draft," and was apparently completed by an individual in the Hospital's security department. It contains a brief hand-written statement concerning the incident and indicates security was notified.

Dr. Beyer's affidavit indicates that he is the chairman of the Hospital's medical peer review committee (the Medical Staff Quality Assurance Committee), and that he has personal knowledge of the statements made in the affidavit. He avers the Hospital's peer review committee evaluates cases involving patient care at the Hospital and outpatient facilities, including the SMART Institute. The affidavit explains that, pursuant to hospital policy, incident reports are prepared immediately following an unusual occurrence to facilitate the peer review investigation process. These reports are then forwarded to the Hospital Quality Council Committee for analysis, and summaries are prepared and forwarded to him as chairman of the medical peer review committee with copies of the reports. These reports are received by, made at the behest of, and maintained by the peer review committee in the performance of its functions. The affidavit goes on to say the reports do not constitute routine business or medical records of the Hospital, and are not a part of the patient's medical chart. Beyer enumerates the specific production requests and states that the documents tendered, which would be responsive to the requests, constitute records and communications to the peer review committee concerning the matter involving Ms. Erickson.

The affidavit is sufficient to make a prima facie showing that the documents are entitled to the claimed privilege. *See In re WHMC*, 996 S.W.2d 409, 411 (Tex.App.—Houston [14th Dist.] 1999, orig. proceeding); *Arlington Mem'l*, 952 S.W.2d at 928–29; *Northeast Community Hosp. v. Gregg*, 815 S.W.2d 320, 326 (Tex.App.—Fort Worth 1991, orig. proceeding). Nevertheless, upon in camera submission, the trial court, without specifying the basis for its ruling, determined the documents were not protected by the privilege.

■ In favor of production, the Ericksons initially argue that the peer review privilege is inapplicable because the documents in question were prepared by em-

1. The Ericksons did not allege the Hospital waived the privilege or provide proof of waiv- er at the hearing. Therefore, we do not discuss the issue of waiver in this opinion.

ployees of Richards Healthcare, against whom the Hospital has filed a cross-action. The Ericksons presented evidence consisting of deposition excerpts showing one or both of the reports were prepared by employees of Richards Healthcare and sent to the Hospital's "quality management" department. The fact that the reports, or portions thereof, were prepared by persons other than Hospital employees or medical staff is not material to the question of whether the documents are subject to peer review privilege. Furthermore, there is no statutory requirement that the documents be made by Hospital employees or medical staff.

■ Next, the Ericksons argue the privilege is inapplicable because the underlying case presents a premises liability case, versus a medical malpractice or health care liability case. However, the Ericksons cite no authority limiting application of the privilege to specific causes of actions, nor are we aware of any.[2] Likewise, we cannot perceive how the fact that the Hospital has filed a cross-action against Richards Healthcare in the underlying case is relevant to the privilege claim. We therefore conclude the peer review privilege may be applicable in a premises liability case, provided the party resisting disclosure satisfies the burden of establishing the privilege.

Further, the Ericksons propose the peer review affidavit was controverted by evidence at the motion to compel hearing. This contention, however, is not supported by the record. To the contrary, we find no evidence directly controverting the assertions in Dr. Beyer's affidavit. Deposition testimony in fact supports the allegation

that incident reports are made for and sent to the Hospital's quality management committee.

Finally, the Ericksons contend the documents do not fall within the purview of the privilege because they are not related to the quality of medical or health care services or the competence of medical or health care providers. See TEX. OCC.CODE ANN. § 151.002(a)(7)-(8). Instead, they contend the reports are the type kept in the ordinary course of business by the hospital. See TEX. HEALTH & SAFETY CODE ANN. § 161.032(c).

"Medical peer review" means "the evaluation of medical and health care services, including evaluation ... of patient care provided by" professional health care practitioners. TEX. OCC.CODE ANN. § 151.002(7). The term includes evaluation of the accuracy of a diagnosis, the quality of the care provided by a health care practitioner, and any report to a medical peer review committee concerning activities under the committee's review authority. Id. § 151.002(7)(B)-(D). Under article 4590i, section 1.03(a)(2), " 'health care' means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX.REV.CIV. STAT. ANN. art. 4509i, § 1.03(a)(2) (Vernon Supp.2000). The term "medical care" means any act "performed or furnished, or which should have been performed, by one licensed to practice medicine in Texas for, to, or on behalf of a patient during the patient's care, treatment, or confinement." Id. § 1.03(a)(6).

2. Section 160.007(e) of the occupations code provides that unless disclosure is required or authorized by law, a record or determination of or a communication to a medical peer review committee is not subject to discovery and is not admissible as evidence *in any civil judicial proceeding,* absent waiver. See TEX. OCC.CODE ANN. § 160.007(e) (emphasis added). Nor does section 161.032 of the health and safety code limit the privilege to specific types

of actions. See TEX. HEALTH & SAFETY CODE ANN. § 161.032; see also Memorial Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 2 (Tex. 1996) (orig.proceeding) (privilege applied in defamation/libel case); Irving Healthcare Sys. v. Brooks, 927 S.W.2d 12, 14–15 (Tex.1996) (orig.proceeding) (privilege applied in libel/slander/interference with business relations case).

The peer review privilege does not protect records "made or maintained in the regular course of business." TEX. HEALTH & SAFETY CODE ANN. § 161.032(c). For the purposes of peer review analysis, "records made or maintained in the regular course of business" means "records kept in connection with the treatment of [a hospital's] individual patients as well as the business and administrative files and papers apart from committee deliberations." *McCown*, 927 S.W.2d at 10 (quoting *Texarkana Mem'l Hosp., Inc. v. Jones*, 551 S.W.2d 33, 35 (Tex.1977) (orig.proceeding)).

It is apparent from the face as well as the content of the Patient Quality Event Tracking Report that it was made exclusively for the Hospital's medical peer review committee. On its face, the report specifically states "Do Not Copy," and that it is "Privileged and Confidential," "For Quality Assurance Committee Use Only," and "Not Part of [a Patient's] Medical Record." In addition, the content of the document, in part, references the medical and health care provided to Ms. Erickson by members of the Smart Institute staff and a physician summoned by the staff to aid Ms. Erickson after the occurrence. It describes Ms. Erickson's condition before the occurrence, a diagnosis of her condition after the occurrence, and the care and treatment she received at the Institute until her transfer to a hospital. Moreover, the uncontroverted affidavit of Dr. Beyer explains that the document was prepared to provide information to facilitate the committee's peer review function of evaluating "the quality of medical and health-care services" provided by the Institute following unusual occurrences, such as the one involving Ms. Erickson. The document does not appear to have been generated for routine business or administrative purposes and Dr. Beyer's affidavit supports this interpretation. Thus, we conclude the Patient Quality Event Tracking Report is peer review material and the trial court abused its discretion in ordering production of this report.

However, it is not clear from the face or the content of the Security Services Incident Report that it was necessarily prepared by or for the Hospital's peer review committee for purposes of investigating such occurrences. The document is not related to any medical or health care services provided to Ms. Erickson following the occurrence. To the contrary, it appears to have been prepared as a routine matter by the Hospital's security department for purposes of general information gathering. This document more likely falls within the category of records or reports made or maintained in the normal course of business by the Hospital apart from committee deliberations. That the document may have been forwarded to and considered by the committee does not transform the document into a committee record. *See Barnes v. Whittington*, 751 S.W.2d 493, 496 (Tex.1988) (orig.proceeding); *McAllen Methodist Hosp. v. Ramirez*, 855 S.W.2d 195, 198 (Tex.App.—Corpus Christi 1993, orig. proceeding). Consequently, we cannot conclude the trial court abused its discretion in ordering production of this report.

CONCLUSION

The writ of mandamus is conditionally granted in part. We direct the trial court to modify its discovery order to the extent the order compels discovery of the Patient Quality Event Tracking Report. A writ will issue only if the trial court does not modify its January 24, 2000 order accordingly. The writ is otherwise denied.