Martinez v. Abbott Laboratories and Harris Methodist

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-324-CV

POLLY MARTINEZ APPELLANT

V.

ABBOTT LABORATORIES AND APPELLEESABBOTT LABORATORIES, INC., 

D/B/A ABBOTT SALES, MARKETING, 

& DISTRIBUTION CORPORATION AND 

HARRIS METHODIST FORT WORTH

D/B/A HARRIS METHODIST FORT

WORTH HOSPITAL 

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

Appellant Polly Martinez appeals the trial court’s grant of summary judgment to appellees Abbott Laboratories
 and Abbott Laboratories, Inc., d/b/a Abbott Sales, Marketing, & Distribution Corporation 
and Harris Methodist Fort Worth d/b/a Harris Methodist Fort Worth Hospital.  Martinez also appeals the trial court’s dismissal of her suit against Harris for her failure to file an adequate expert report.  Because we conclude that the expert report offered no opinion on liability or causation and that Martinez produced no evidence 
showing that either Harris or Abbott caused her injuries, we affirm the trial court’s judgment.

I.  FACTUAL AND PROCEDURAL BACKGROUND

While recovering from surgery at Harris, Martinez was administered morphine through a patient-controlled anesthesia pump (“PCA pump”) allegedly designed by Abbott.  Martinez’s husband pushed the PCA pump button to deliver morphine to Martinez’s body throughout the night following her surgery, even while she was asleep.  Martinez eventually became extremely sedated and unresponsive, allegedly from a morphine overdose.  After Harris nurses discovered Martinez in this condition, Martinez was immediately treated with medicine and woke up within a few minutes.  Martinez subsequently sued Harris and Abbott, alleging that the overdose was caused by a misprogramming of the pump, a defective pump, or both.

Martinez filed a report of D. John Doyle, M.D. in an attempt to comply with the expert report requirements of article 4590i of the 
Medical Liability and Insurance Improvement Act.
(footnote: 1) 
 
In the report, the expert stated that, due to Harris’s failure to preserve evidence and its assertion of claims of privilege,
 he had no opinion about the quality of care provided to Martinez in this case: 

Based on a review and understanding of the deposition testimony and the Harris Fort Worth Hospital medical record in this case, I am of the opinion that 
it is not possible to determine whether or not the hospital’s employees breached the standard of care or whether the Abbott PCA infusion pump malfunctioned due to the following facts:

1. Harris Hospital did not identify, isolate, or test the infusion pump in question;

2. There was not a physical download of information from the machine which was archived in the records, and 

3. No access has been allowed into the hospital’s post-event investigative efforts or the hospital’s eventual conclusions about what occurred.

The only opinion provided in the expert report was that “it was below the standard of care for the hospital to fail to identify and isolate this pump, test it, and archive a copy of the historical download.  This posed an unnecessary danger to subsequent patients and prevented an accurate medical record in this case.”

Harris filed a motion to dismiss for failure to file an adequate expert report under article 4590i, and both Harris and Abbott filed no-evidence summary judgment motions.  
See 
Tex. Rev. Civ. Stat. Ann.
 art. 4590i, § 
13.01
(e); 
Tex. R. Civ. P.
 166a(i).  The trial court granted all three motions and dismissed Martinez’s claims against Harris and Abbott with prejudice.  

II.  HEALTH CARE PRIVILEGES

Included in Martinez’s discovery requests to Harris were requests for production of statements of persons with knowledge of relevant facts, documents relating to hospital investigations of the incident, and correspondence and statements between Harris and its insurer related to this lawsuit.  Martinez also served interrogatories asking Harris to describe its investigations of the incident and notices it received of “mishaps, accidents, or injuries” involving the PCA pump.  After Harris withheld documents and information from its discovery responses on the basis of privilege and refused to provide deposition testimony regarding its investigations of the incident, Martinez filed a motion to compel.  In this motion, Martinez requested the trial court to overrule Harris’s claims of privilege and compel Harris to produce responsive documents, answer her interrogatories, and “fully respond to questions regarding the identification of the infusion pump in question and the factual knowledge of the employees, agents, and representatives of Defendant HARRIS METHODIST as to what occurred on the occasion in question.”

In response, Harris supported its claims of privilege with affidavits from its Directors of Risk Management and Continuous Improvement and submitted the documents it claimed were privileged to the trial court for 
in camera
 review.  After a visiting judge found that the documents were subject to discovery, Harris urged the court to reconsider, and the presiding judge signed an order holding that all but two of the documents submitted for 
in camera
 review were privileged and not subject to discovery.
(footnote: 2)  The judge further ordered that Martinez would be allowed to depose Harris’s witnesses about whether Harris conducted an investigation of the incident, who was involved in the investigation, and when and where the investigation was conducted, but the judge barred any further inquiry into the hospital investigation issue.  Martinez challenges this order in her first five issues on appeal.

Martinez claims that Harris has asserted only the “‘peer review’ concept” to support its claims of privilege, and the record reflects that Harris refused to respond to deposition questions regarding the investigation on the basis of “peer review or quality improvement, as that is protected by privilege.” However, the record also reveals that Harris asserted various privileges in response to Martinez’s discovery requests, including the medical peer review committee privilege and the medical committee privilege.  
See
 
Tex. Occ. Code Ann.
 §§
 160.001-.015 (Vernon 2004); 
Tex. Health & Safety Code Ann
. §
§ 161.031-.033 (Vernon Supp. 2004-05)
.
(footnote: 3) 

Peer review committee privilege

The medical peer review committee privilege protects records or determinations of, or communications to, 
a medical peer review committee 
unless they are made in the regular course of business or the privilege has been waived. 
 
Tex. Occ. Code Ann.
 § 160.007(e); 
Tex. Health & Safety Code Ann
. § 161.032(f). 
 According to the affidavit of Harris’s Risk Management Director, the documents withheld from discovery comprise Harris’s “Risk Management File,” which consists “solely of documentation generated by, or at the direction of the Risk Management Committee.”  Martinez argues that Harris’s Risk Management Committee does not serve a peer review purpose because it “is involved in risk management and the investigation of claims”; therefore, Martinez maintains that Harris is not entitled to assert the peer review privilege over documents and testimony regarding the incident and “any conclusions reached as to what factually occurred.”

As t
he party asserting the privileges, Harris has the burden of proving that the privileges apply to the information sought
. 
 
Arlington Mem'l Hosp. Found., Inc. v. Barton
, 952 S.W.2d 927, 929 (Tex. App.—Fort Worth 1997, orig. proceeding)
.  This is generally accomplished by affidavit. 
 In re Osteopathic Med. Ctr. of Tex., 
16 S.W.3d 881, 884 (Tex. App.—Fort Worth 2000, orig. proceeding)
.
  Harris submitted an affidavit of its Risk Management Director in response to Martinez’s motion to compel, but the affidavit’s vague statements do not satisfy the statutory requirements for establishing the peer review privilege.

A “medical peer review committee” is a hospital committee that operates under the hospital’s written bylaws and is authorized to evaluate the quality of medical and health care services or the competence of physicians.  
Tex. Occ. Code Ann.
 § 151.002(a)(8).  The Risk Management Director’s affidavit states that Harris’s Risk Management Committee was established pursuant to Harris’s medical staff bylaws, and it states that “various committees have been established to oversee, review and evaluate the quality of the treatment being provided to the patients at [Harris] . . . and to review and evaluate the provision of medical care, including the performance of the physicians, nurses or other medical personnel in providing such care.”

The Risk Management Director’s affidavit does not state, however
, that the Risk Management Committee is one of these “various committees” that are authorized to carry out these quality reviews.  While 
the affidavit vaguely indicates that one of the duties of the Risk Management Committee is to direct investigations of “identified risk exposure and reports of dissatisfaction,” it does not indicate whether these investigations are performed for the purpose of quality assessment or, as Martinez argues, for financial, “claims adjustment” purposes.  An affidavit supporting a claim of medical peer review privilege “
must necessarily be descriptive enough to be persuasive,”
 
In re Osteopathic Med. Ctr., 
16 S.W.3d at 884,
 but the affidavit’s vague reference to “risk exposure” does not provide the description needed to discharge Harris’s burden of proving that the Risk Management Committee reviews the quality of medical and health care services and is therefore entitled to assert the peer review privilege.
 
 
See id.

In contrast, the affidavit of Harris’s Director of Continuous Improvement is sufficient to establish a prima facie claim of the peer review privilege.  This affidavit does state that Harris’s Quality Review Committee is one of the “various committees” formed under Harris’s bylaws “to review and evaluate the provision of medical care, including the performance of the physicians.”  The Director of Continuous Improvement’s affidavit goes on to state that the Quality Review Committee may perform a peer review evaluation of an incident underlying a health care liability claim and, in connection with a peer review, generates a “Peer Review File” containing confidential documentation that is not kept in the regular course of business.  Therefore, the records and determinations of, and communications to, Harris’s Quality Review Committee are protected by the medical peer review committee privilege.  
See
 
Tex. Occ. Code Ann.
 § 160.007(e); 
Tex. Health & Safety Code Ann
. § 161.032(f).  

The record is not clear as to which committee—the Risk Management Committee or the Quality Review Committee—conducted the investigation into Martinez’s morphine overdose.
(footnote: 4)  The 
in camera 
documents identified by Harris’s Director of Continuous Improvement 
as comprising the “Peer Review File” are the very same documents identified by the Risk Management Director as comprising the “Risk Management File.”
  
Many of the 
in camera
 documents, however, are stamped “Risk Management Committee” or involve communications with Harris’s Risk Management Director.  Even if these documents were forwarded to the Quality Review Committee, these risk management documents would not become protected by the peer review privilege simply because the Quality Review Committee had reviewed them.  
See Irving Healthcare Sys. v. Brooks
, 927 S.W.2d 12, 18 (Tex. 1996).  Therefore, because the affidavit of Harris’s Risk Management Director is insufficient to establish the applicability of the medical peer review committee privilege to the Risk Management Committee, Harris may not assert the peer review privilege to withhold from discovery any investigation or documents generated by the Risk Management Committee.  

Medical committee privilege

The peer review privilege is not the only confidentiality afforded hospitals, however; in addition, the medical committee privilege protects records and proceedings of a “medical committee” unless the records are “made or maintained in the regular course of business by a hospital.”  
Tex. Health & Safety Code Ann
. §
 161.032(a), (d), (f)
.  A "medical committee" is broadly defined and includes "any committee . . . of a hospital."  
Id.
 § 161.031(a)(1).  The affidavit of Harris’s Risk Management Director does sufficiently show that the Risk Management Committee is a committee of Harris Methodist Fort Worth Hospital.  Therefore, because the Risk Management Committee qualifies as a “medical committee” under the statute, its records and proceedings that are not made in the regular course of business are confidential and not subject to discovery.  
See id.
 § 161.032(a).

Martinez argues that Harris’s investigation is subject to discovery
 because it was conducted in the regular course of business.  A Harris nurse testified at her deposition that she and another nurse filled out an incident report after Martinez’s morphine overdose and gave it to their department manager; the nurse also testified that submitting an incident report was a “routine” matter. However, this incident report states on its face that it is a “CONFIDENTIAL COMMITTEE REPORT” and “Not part of the Medical Record”
 and that copying the report is prohibited; therefore, it was clear to the nurses filling out the report that it was to be submitted to a medical committee and that it was not the type of document normally kept in a patient’s file. 

Hospital records that are not privileged because they are made in the regular course of business are those “kept in connection with the treatment of the individual patients as well as the business and administrative files and papers 
apart from committee deliberations
.”  
Texarkana Mem’l Hosp., Inc. v. Jones
, 551 S.W.2d 33
, 35 (Tex. 1977) (emphasis added).  This incident report was not made for Martinez’s individual patient record; instead, it was made specifically for a medical committee’s use.  Because any investigation commissioned by the Risk Management Committee would have been conducted for the committee’s purposes, the documents and proceedings generated by the investigation would be protected by the medical committee privilege.  
See
 
Tex. Health & Safety Code Ann
. §
 161.032(a);
 
Jordan v. Fourth Court of Appeals
, 701 S.W.2d 644, 648 (Tex. 1985)
 (
holding that medical committee privilege “extends to documents that have been prepared by or at the direction of the committee for committee purposes”); 
In re WHMC
, 996 S.W.2d 409, 412 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (“[I]nformation is protected by the hospital committee privilege if sought out by or brought to the attention of the committee for purposes of an investigation, review, or other deliberative proceeding.”).

In summary, the Peer Review File and any investigation conducted by Harris’s Quality Review Committee are protected by the medical peer review committee
 privilege and are not subject to discovery; the Risk Management File and any investigation conducted by the Risk Management Committee are protected by the medical committee privilege and are not subject to discovery.  Therefore, the trial court did not err in ordering that the 
in camera
 documents and details of the investigation were not subject to discovery.  The fact that Harris asserted only the peer review privilege, and not the medical committee privilege, in refusing to answer deposition questions relating to 
the investigation does not require us to overrule the trial court’s order with regard to any investigations conducted by the Risk Management Committee.  
See State Bar of Tex. v. Evans
, 774 S.W.2d 656
, 658 n.5 (Tex. 1989) (holding that an appellate court must uphold an evidentiary ruling if there is any legitimate basis for the ruling, even if the legitimate basis was not urged in the trial court).  Furthermore, because the medical committee privilege protects all records and proceedings of the Risk Management Committee, Harris was not required to assert an “investigative privilege,” as Martinez claims.  

Martinez argues that allowing Harris’s Risk Management Committee to claim privilege over its investigation is a “gross overreaching of the statutes.”  To the contrary,

[w]e see it to be our responsibility to apply this statute exactly as the Legislature has written it.  If the “records and proceedings of any hospital committee” are confidential and beyond the reach of court subpoena, then the deliberations of every group of persons constituted by the rules and bylaws of the hospital in its service is placed behind the veil.

Texarkana Mem’l Hosp.
, 551 S.W.2d at 35.  The improvement of medical treatment is served by the “free and uninhibited discussion of all events and experiences within the hospital,” and the medical committee privilege serves this goal by encouraging open and thorough investigation
.  
Id.
  Furthermore, the statute does not prohibit discovery from other sources; Martinez is free to conduct her own investigation into the incident, gathering factual information from Harris employees who were present at the time.  What she cannot do, however, is force Harris to divulge the information its Risk Management Committee has gathered in the course of committee proceedings; rather, she must seek evidence from alternative, nonprivileged sources.  
See id. 
at 36 (“The presentation of evidence or opinion to a [h]ospital committee during its deliberations does not thereby make that evidence or opinion privileged if offered or proved by means apart from the record of the committee.”); 
cf.
 
Irving Healthcare
, 927 S.W.2d at 12, 18 (stating that deposition questions inquiring about communications to a peer review committee and what the committee considered are objectionable).

Because the medical committee privilege applies to the Risk Management Committee’s records and proceedings, we uphold the trial court’s discovery order and overrule Martinez’s first five issues on appeal.

III.  EFFECT OF PRIVILEGE LIMITATIONS AND ALLEGED SPOLIATION ON DISMISSAL AND SUMMARY JUDGMENT RULINGS 

In her sixth through tenth issues, Martinez argues that the trial court erred in granting Harris’s and Abbott’s summary judgment motions and Harris’s 4590i motion to dismiss because the trial court’s privilege ruling and Harris’s spoliation of evidence relating to the PCA pump denied her an adequate opportunity for discovery and violated the open courts provision of the Texas Constitution.  Martinez also argues in her thirteenth issue that the trial court erred in granting Harris’s summary judgment motion because the record contained evidence of spoliation committed by Harris.  Martinez failed to present her open-courts challenge to the trial court, so she has not preserved this argument for our review.  
See S.W. Elec. Power Co. v. Grant
, 73 S.W.3d 211, 222 (Tex. 2002).
(footnote: 5)
 Harris argues that Martinez has also
 waived her spoliation complaint because she did not properly raise the issue or obtain a ruling in the trial court.  
See
 
Tex. R. App. P.
 33.1(a)(1)(A).  
Although Martinez pleaded spoliation as a cause of action in her petition, Harris asserts that the spoliation issue was not properly before the trial court because Texas does not recognize spoliation of evidence as an independent tort.  
See Trevino v. Ortega
, 969 S.W.2d 950, 953 (Tex. 1998).  

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a); 
see also
 
Tex. R. Evid.
 103(a)(1).  
The objecting party must get a ruling from the trial court.  This ruling can be either express or implied.  
Frazier v. Yu,
 987 S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied).  The record shows that 
Martinez’s spoliation argument was sufficiently specific to make the trial court aware of her complaint:  Martinez asserted in her petition that Harris’s failure to identify, isolate, or test the PCA pump and failure to download the dosage history “destroyed by omission and commission the ability to determine what occurred with reference to this infusion pump on the occasion in question and proximately caused damage to Plaintiff’s ability to prosecute this lawsuit.”

The intentional destruction of evidence may, in the trial court’s discretion, give rise to a presumption that the destroyed evidence would not have been favorable to the spoliator.  
Ordonez v. M.W. McCurdy & Co. Inc.
, 984 S.W.2d 264, 273 (Tex. App.—Houston [1st Dist.] 1998, no pet.)
.  Although Martinez did not specifically request a spoliation presumption, 
the trial court implicitly denied Martinez any relief as to her spoliation complaint by granting summary judgment to Harris and Abbott.  
Because Martinez included a spoliation claim in her petition and presented summary judgment evidence that Harris failed to identify, test, and download information from the PCA pump involved, and the trial court nevertheless granted summary judgment, we presume that the trial court considered and rejected her spoliation complaint since a spoliation presumption would have precluded summary judgment.  
See Aguirre v. S. Tex. Blood & Tissue Ctr.
, 2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied).  We review the trial court’s decision under an abuse of discretion standard.  
See
 
Wal-Mart Stores, Inc. v. Johnson
, 106 S.W.3d 718, 722-23 
(Tex. 2003)
. 

Martinez argues that a no-evidence summary judgment movant’s alleged spoliation of evidence denies the nonmovant an “adequate time for discovery,” asserting that it is impossible for a nonmovant to meet rule 166a(i)’s requirement of providing summary judgment evidence when the movant has wrongly destroyed the very evidence needed to meet that requirement. 
 
Tex. R. Civ. P.
 166a(i).  However, Martinez does not show that Harris’s failures to identify the PCA pump involved in the incident and download information from the pump itself were wrongful in anyway
.  

To raise the spoliation issue, Martinez bore the burden of establishing that Harris had a duty to preserve evidence relating to the PCA pump
.  
See
 
Wal-Mart
, 106 S.W.3d at 722
.  This duty arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim.  
Id
.; 
cf.
 
Nat’l Tank Co. v. Brotherton
, 851 S.W.2d 193, 204 (Tex. 1993) (orig. proceeding) (holding that courts must examine 
the “totality of the circumstances” in making an objective determination of whether litigation was anticipated).  After reviewing all the circumstances surrounding the incident, we conclude that, under the facts of this case, Harris had no duty to isolate or download information from the PCA pump because nothing about the circumstances surrounding the incident would have put Harris on notice that there was a substantial chance that Martinez would pursue a claim.  
See Wal-Mart
, 106 S.W.3d at 722.  

The summary judgment evidence shows that a Harris nurse 
found Martinez sedated and unresponsive to verbal stimuli while being administered morphine through the PCA pump.  The nurse testified in her deposition that, although Martinez was unresponsive, her respiration and vital signs were normal.  The nurse testified that Martinez was immediately administered medicine and “was okay after that”—sitting up, talking, and walking within a few minutes.  
The nurse further testified that she monitored Martinez throughout the rest of the day, and Martinez did not exhibit any signs of respiratory depression.
  The nurse did not believe the pump malfunctioned because she “pulled up the history [of the morphine amounts delivered by the pump] and everything was correct,” and the history was consistent with the amount of medication ordered by the physician.  
Harris employees returned the pump to the hospital pharmacy’s storage room, as was the normal practice when a patient had finished using a pump; they did not
 destroy or conceal the pump after the incident
.

In short, the summary judgment evidence shows that 
Martinez’s husband pushed the PCA pump button throughout the night following her surgery, even while she was asleep; that
 Martinez was unresponsive for a few minutes, but her vital signs were not affected; that Harris determined the PCA pump neither had malfunctioned nor was misprogrammed; 
and that Martinez did not appear to suffer any ill effects from her brief unresponsiveness. 
 Martinez’s expert report opines that “it was below the standard of care for the hospital to fail to identify and isolate this pump, test it, and archive a copy of the historical download,” but, considering the totality of the circumstances, this opinion provides no reason that 
Harris should have known that Martinez would sue them over this incident.  
Under these facts, we agree with Harris that there was no reason to isolate the PCA pump or download the information because nothing indicated to Harris that the PCA pump malfunctioned or was misprogrammed or that Martinez suffered any harm from her brief period of unresponsiveness. 
 Therefore, because Martinez produced no evidence giving rise to a duty on Harris’s part to preserve evidence relating to the PCA pump
, we conclude that the trial court did not abuse its discretion in rejecting Martinez’s spoliation complaint.  
See Wal-Mart
, 106 S.W.3d at 722-23 (holding spoliation presumption unwarranted when decorative reindeer that fell on plaintiff’s head was disposed of in the normal course of business because plaintiff did not seem seriously injured and did not indicate that he might seek legal relief);
 Aguirre
, 2 S.W.3d at 457-58 (holding spoliation presumption unwarranted when blood bank destroyed donor records in the regular course of its business; blood bank
 had no reasonable expectation that litigation would arise from the transfusion at the center of the lawsuit)
.

Because we conclude that Harris did not wrongly destroy evidence relating to the PCA pump, and because we have previously concluded that the trial court did not err in ruling that the records and proceedings of Harris’s investigation were not subject to discovery, Martinez was not improperly denied an adequate opportunity for discovery.  Therefore, Martinez cannot argue that any lack of discovery requires us to reverse the trial court’s rulings on the motions for summary judgment and the motion to dismiss.  We overrule issues six through ten of Martinez’s appeal.  Likewise, because Martinez was not entitled to a spoliation presumption, Martinez cannot argue that any evidence of Harris’s failure to test or download information from the PCA pump required the trial court to deny Harris’s motion for summary judgment.  Therefore, we overrule Martinez’s thirteenth issue as well.

IV.  EXPERT REPORT

In her eleventh issue, Martinez argues that the trial court erred in granting Harris’s motion to dismiss because her expert report was a good-faith attempt to comply with the statutory requirements, given the limitations of the trial court’s privilege ruling and Harris’s failure to preserve evidence
.  We review a 
trial court’s ruling concerning an expert report filed under article 4590i, § 13.01 under an abuse of discretion standard.  
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios
, 46 S.W.3d 873, 875 (Tex. 2001).  Because Martinez filed an expert report that fails to provide a basis for the trial court to determine that her claims have merit, we conclude that the trial court did not err in dismissing her suit.

Section 13.01 requires medical malpractice plaintiffs, within 180 days of filing suit, either to provide each defendant physician and health care provider with an expert report and the expert’s curriculum vitae or to nonsuit the claims.  
Tex. Rev. Civ. Stat. Ann.
 art. 4590i, § 
13.01(d).  A defendant may move to challenge the adequacy of the plaintiff’s report, and the trial court must grant the motion if "it appears to the court . . . that the report does not represent a good faith effort to comply with the definition of an expert report."   
Id. § 
13.01(l).

The statutory definition of “expert report” requires a fair summary of the expert’s opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury.  
Tex. Rev. Civ. Stat. Ann.
 art. 4590i, § 
13.01
(r)(6). 
 Because the purpose of article 4590i is to curtail frivolous claims against physicians and other health care providers
, 
see
 
Hart v. Wright
, 
16 S.W.3d 872, 876 (Tex. App.—Fort Worth 2000, pet. denied), 
the expert report must provide a basis for the trial court to conclude that the claims have merit
.  
Palacios
, 46 S.W.3d at 879.  The expert report submitted by Martinez, however, makes clear that Martinez does not have sufficient evidence to substantiate the theories of recovery underlying her claims.  In the report, the expert states that, due to Harris’s failure to preserve evidence and claims of privilege,
 he has no opinion about the quality of care provided to Martinez in this case.  

Instead, the only opinion expressed by Martinez’s expert is that “it was below the standard of care for the hospital to fail to identify and isolate this pump, test it, and archive a copy of the historical download.”  The opinion does not, however, go on to show a causal relationship between this breach of the standard of care and the injury suffered by Martinez.  Instead, the opinion links the breach with potential harm to patients 
other than
 Martinez and with Martinez’s evidentiary difficulties in this lawsuit: “This posed an unnecessary danger to subsequent patients and prevented an accurate medical record in this case.”  This opinion does not satisfy the causal connection required by the statute.  
See
 
Tex. Rev. Civ. Stat. Ann.
 art. 4590i, § 
13.01
(r)(6)
.

Section 13.01 contains no exception to the expert report requirement, so Martinez’s expert’s reasons for failing to provide an opinion on the medical treatment provided in this case do not excuse Martinez’s noncompliance with the statute.  
Id.
 § 13.01.  We have previously concluded that Harris’s failure to preserve evidence about the PCA pump was not wrongful and that the Risk Management Committee’s documents and proceedings are statutorily exempt from discovery; therefore, this report indicates only that Martinez cannot substantiate her claims with any properly discoverable evidence.  Because unsubstantiated claims are the very type of danger that article 4590i’s provisions were intended to address, and because Martinez’s expert report did not provide any basis upon which the trial court could conclude that her claims had merit, the report did not represent a good-faith effort to comply with the statutory requirements.  We overrule Martinez’s eleventh issue.  

V.  SUMMARY JUDGMENT

Finally, in her twelfth issue, Martinez argues that the trial court erred in granting Harris’s motion for summary judgment because Martinez carried her burden of proof under rule 166a(i).  
Tex. R. Civ. P.
 166a(i).  However, with no expert testimony or other evidence before the trial court that either Harris or Abbott caused Martinez’s injuries, the court was correct in granting summary judgment against Martinez.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.  
Id
.  The motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 
73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.  
See
 
Tex. R. Civ. P.
 166a(i) & cmt.; 
S.W. Elec. Power Co., 
73 S.W.3d at 215.

We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered.  
Johnson
, 73 S.W.3d at 197; 
Morgan v. Anthony
, 27 S.W.3d 928, 929 (Tex. 2000).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  
Moore v. K Mart Corp.
, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

Pursuant to rule 166a(i), Harris moved for summary judgment on the grounds that Martinez presented “no evidence of a reasonably close causal connection between the alleged breach of the standard of care and the alleged injury.”  
In a medical malpractice action, 
the plaintiff must establish causation based upon a "reasonable medical probability" and not mere conjecture, speculation, or possibility.  
Park Place Hosp. v. Estate of Milo
, 909 S.W.2d 508, 511 (Tex. 1995
); 
Marvelli v. Alston
, 
100 S.W.3d 460, 470 (Tex. App.—Fort Worth 2003, pet. denied)
. 
 On appeal, Martinez asserts that the trial court erred in granting summary judgment to Harris because the two expert opinions she submitted in response “are clear that the overdose incident caused Martinez damage.”

However, the ultimate standard of proof on the causation issue is “whether, by a preponderance of the evidence, 
the negligent act or omission 
is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." 
Park Place Hosp.
, 909 S.W.2d at 511 (emphasis added).  In a medical malpractice action, expert testimony is required to prove medical negligence unless the form of treatment is a matter of common knowledge or within the experience of a layperson.  
See Hood v. Phillips
, 554 S.W.2d 160, 165-66 (Tex. 1977); 
Arlington Mem’l Hosp. Found., Inc. v. Baird
, 991 S.W.2d 918, 922 (Tex. App.—Fort Worth 1999, pet. denied).  While a morphine overdose may have injured Martinez, the record contains no evidence linking the overdose to any negligent act or omission established by expert testimony as attributable to Harris. 
 Without this evidence, Martinez cannot establish that Harris’s negligence caused her injuries, an essential element of her claims against Harris.  We overrule Martinez’s twelfth issue.

VI.  CONCLUSION

Martinez’s expert report provided no basis for trial court to determine that her claims had merit, and Martinez produced no evidence 
showing that any negligence of either Harris or Abbott caused the injuries that she attributes to the morphine overdose incident.  Therefore, the trial court did not err in granting Harris’s motion to dismiss and Harris’s and Abbott’s motions for summary judgment.  Having overruled all Martinez’s issues on appeal, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL F: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED
:  August 31, 2004

FOOTNOTES
1:
See
 
Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01, 1995 Tex. Gen. Laws 985, 985-87,
 repealed by
 Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at 
Tex. Civ. Prac. & Rem. Code §
 74.35 (Vernon Supp. 2004-05)).  The former statute continues in effect for application to cases like this one, filed before the new Act’s September 1, 2003 effective date.  
See
 Act of June 2, 2003, 78th
 Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.  Therefore, all references hereinafter to 
Tex. Rev. Civ. Stat. Ann
. art. 4590i are to the former statute.

2:
The two nonprivileged documents were emails regarding Martinez’s request for a copy of her medical records.

3:
Specifically, Harris responded as follows:

[T]his request seeks information and materials exempted and protected from discovery under the 
Texas Medical Practice Act
, 
Tex. Rev. Civ. Stat. Ann
. art. 4495b 
et seq
., Art. 4525b, recently recodified as Sections 151.001 
et seq
. of the 
Texas Occupations Code
; Art. 4525b, 
Tex. Rev. Civ. Stat. Ann
., recently recodified as Sections 303.001 
et seq
., Texas Occupations Code § 160.001 
et seq
. of the 
Texas Occupations Code
; 
Texas Health and Safety Code
, § 161.031-033; and 42 U.S.C.A. § 11101 
et seq
.

4:
Although Martinez claims that only the Risk Management Committee conducted the investigation, the stipulation in the record upon which Martinez bases this assertion is unsigned.

5:
Harris and Abbott also contend that Martinez has not preserved these issues for appeal because she did not file either an affidavit explaining the need for further discovery or a verified motion for continuance.  
See
 
Tenneco Inc. v. Enter. Prods. Co.
, 925 S.W.2d 640, 647 (Tex. 1996).  But the trial court had already held that the discovery desired by Martinez, the Risk Management Committee’s investigation and file, was privileged, and an extension of the discovery period would not have addressed Martinez’s complaint that Harris failed to preserve the evidence she sought regarding the PCA pump.  Therefore, we cannot conclude that Martinez waived these issues by failing to present what would have been a pointless request.  
See City of Gladewater v. Pike
, 727 S.W.2d 514, 518 (Tex. 1987) (“[A] court should not require the doing of a useless thing.”).