COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-324-CV
  
  
POLLY 
MARTINEZ                                                                 APPELLANT
  
V.
   
ABBOTT 
LABORATORIES AND                                                 APPELLEES
ABBOTT 
LABORATORIES, INC.,
D/B/A 
ABBOTT SALES, MARKETING,
& 
DISTRIBUTION CORPORATION AND
HARRIS 
METHODIST FORT WORTH
D/B/A 
HARRIS METHODIST FORT
WORTH 
HOSPITAL
  
------------
 
FROM 
THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Polly Martinez appeals the trial court’s grant of summary judgment to 
appellees Abbott Laboratories and Abbott Laboratories, Inc., d/b/a Abbott Sales, 
Marketing, & Distribution Corporation and Harris Methodist Fort Worth d/b/a 
Harris Methodist Fort Worth Hospital. Martinez also appeals the trial court’s 
dismissal of her suit against Harris for her failure to file an adequate expert 
report. Because we conclude that the expert report offered no opinion on 
liability or causation and that Martinez produced no evidence showing that 
either Harris or Abbott caused her injuries, we affirm the trial court’s 
judgment.
I. FACTUAL AND PROCEDURAL BACKGROUND
        While 
recovering from surgery at Harris, Martinez was administered morphine through a 
patient-controlled anesthesia pump (“PCA pump”) allegedly designed by 
Abbott. Martinez’s husband pushed the PCA pump button to deliver morphine to 
Martinez’s body throughout the night following her surgery, even while she was 
asleep. Martinez eventually became extremely sedated and unresponsive, allegedly 
from a morphine overdose. After Harris nurses discovered Martinez in this 
condition, Martinez was immediately treated with medicine and woke up within a 
few minutes. Martinez subsequently sued Harris and Abbott, alleging that the 
overdose was caused by a misprogramming of the pump, a defective pump, or both.
        Martinez 
filed a report of D. John Doyle, M.D. in an attempt to comply with the expert 
report requirements of article 4590i of the Medical Liability and Insurance 
Improvement Act.[1]  In the report, the expert 
stated that, due to Harris’s failure to preserve evidence and its assertion of 
claims of privilege, he had no opinion about the quality of care provided to 
Martinez in this case:
  
Based 
on a review and understanding of the deposition testimony and the Harris Fort 
Worth Hospital medical record in this case, I am of the opinion that it is not 
possible to determine whether or not the hospital’s employees breached the 
standard of care or whether the Abbott PCA infusion pump malfunctioned due to 
the following facts:
1.Harris 
Hospital did not identify, isolate, or test the infusion pump in question;
2.There 
was not a physical download of information from the machine which was archived 
in the records, and
3.No 
access has been allowed into the hospital’s post-event investigative efforts 
or the hospital’s eventual conclusions about what occurred.
 
 
The 
only opinion provided in the expert report was that “it was below the standard 
of care for the hospital to fail to identify and isolate this pump, test it, and 
archive a copy of the historical download. This posed an unnecessary danger to 
subsequent patients and prevented an accurate medical record in this case.”
        Harris 
filed a motion to dismiss for failure to file an adequate expert report under 
article 4590i, and both Harris and Abbott filed no-evidence summary judgment 
motions. See Tex. Rev. Civ. Stat. 
Ann. art. 4590i, § 13.01(e); Tex. 
R. Civ. P. 166a(i). The trial court granted all three motions and 
dismissed Martinez’s claims against Harris and Abbott with prejudice.
II. HEALTH CARE PRIVILEGES
        Included 
in Martinez’s discovery requests to Harris were requests for production of 
statements of persons with knowledge of relevant facts, documents relating to 
hospital investigations of the incident, and correspondence and statements 
between Harris and its insurer related to this lawsuit. Martinez also served 
interrogatories asking Harris to describe its investigations of the incident and 
notices it received of “mishaps, accidents, or injuries” involving the PCA 
pump. After Harris withheld documents and information from its discovery 
responses on the basis of privilege and refused to provide deposition testimony 
regarding its investigations of the incident, Martinez filed a motion to compel. 
In this motion, Martinez requested the trial court to overrule Harris’s claims 
of privilege and compel Harris to produce responsive documents, answer her 
interrogatories, and “fully respond to questions regarding the identification 
of the infusion pump in question and the factual knowledge of the employees, 
agents, and representatives of Defendant HARRIS METHODIST as to what occurred on 
the occasion in question.”
        In 
response, Harris supported its claims of privilege with affidavits from its 
Directors of Risk Management and Continuous Improvement and submitted the 
documents it claimed were privileged to the trial court for in camera 
review. After a visiting judge found that the documents were subject to 
discovery, Harris urged the court to reconsider, and the presiding judge signed 
an order holding that all but two of the documents submitted for in camera 
review were privileged and not subject to discovery.[2]  
The judge further ordered that Martinez would be allowed to depose Harris’s 
witnesses about whether Harris conducted an investigation of the incident, who 
was involved in the investigation, and when and where the investigation was 
conducted, but the judge barred any further inquiry into the hospital 
investigation issue. Martinez challenges this order in her first five issues on 
appeal.
        Martinez 
claims that Harris has asserted only the “‘peer review’ concept” to 
support its claims of privilege, and the record reflects that Harris refused to 
respond to deposition questions regarding the investigation on the basis of 
“peer review or quality improvement, as that is protected by privilege.” 
However, the record also reveals that Harris asserted various privileges in 
response to Martinez’s discovery requests, including the medical peer review 
committee privilege and the medical committee privilege. See Tex. Occ. Code Ann. §§ 160.001-.015 
(Vernon 2004); Tex. Health & Safety 
Code Ann. §§ 161.031-.033 (Vernon Supp. 2004-05).[3]
Peer review committee privilege
        The 
medical peer review committee privilege protects records or determinations of, 
or communications to, a medical peer review committee unless they are made in 
the regular course of business or the privilege has been waived. Tex. Occ. Code Ann. § 160.007(e); Tex. Health & Safety Code Ann. § 
161.032(f). According to the affidavit of Harris’s Risk Management Director, 
the documents withheld from discovery comprise Harris’s “Risk Management 
File,” which consists “solely of documentation generated by, or at the 
direction of the Risk Management Committee.” Martinez argues that Harris’s 
Risk Management Committee does not serve a peer review purpose because it “is 
involved in risk management and the investigation of claims”; therefore, 
Martinez maintains that Harris is not entitled to assert the peer review 
privilege over documents and testimony regarding the incident and “any 
conclusions reached as to what factually occurred.”
        As 
the party asserting the privileges, Harris has the burden of proving that the 
privileges apply to the information sought. Arlington Mem'l Hosp. Found., 
Inc. v. Barton, 952 S.W.2d 927, 929 (Tex. App.—Fort Worth 1997, orig. 
proceeding). This is generally accomplished by affidavit. In re Osteopathic 
Med. Ctr. of Tex., 16 S.W.3d 881, 884 (Tex. App.—Fort Worth 2000, orig. 
proceeding). Harris submitted an affidavit of its Risk Management Director in 
response to Martinez’s motion to compel, but the affidavit’s vague 
statements do not satisfy the statutory requirements for establishing the peer 
review privilege.
        A 
“medical peer review committee” is a hospital committee that operates under 
the hospital’s written bylaws and is authorized to evaluate the quality of 
medical and health care services or the competence of physicians. Tex. Occ. Code Ann. § 151.002(a)(8). 
The Risk Management Director’s affidavit states that Harris’s Risk 
Management Committee was established pursuant to Harris’s medical staff 
bylaws, and it states that “various committees have been established to 
oversee, review and evaluate the quality of the treatment being provided to the 
patients at [Harris] . . . and to review and evaluate the provision of medical 
care, including the performance of the physicians, nurses or other medical 
personnel in providing such care.”
        The 
Risk Management Director’s affidavit does not state, however, that the Risk 
Management Committee is one of these “various committees” that are 
authorized to carry out these quality reviews. While the affidavit vaguely 
indicates that one of the duties of the Risk Management Committee is to direct 
investigations of “identified risk exposure and reports of dissatisfaction,” 
it does not indicate whether these investigations are performed for the purpose 
of quality assessment or, as Martinez argues, for financial, “claims 
adjustment” purposes. An affidavit supporting a claim of medical peer review 
privilege “must necessarily be descriptive enough to be persuasive,” In 
re Osteopathic Med. Ctr., 16 S.W.3d at 884, but the affidavit’s vague 
reference to “risk exposure” does not provide the description needed to 
discharge Harris’s burden of proving that the Risk Management Committee 
reviews the quality of medical and health care services and is therefore 
entitled to assert the peer review privilege. See id.
        In 
contrast, the affidavit of Harris’s Director of Continuous Improvement is 
sufficient to establish a prima facie claim of the peer review privilege. This 
affidavit does state that Harris’s Quality Review Committee is one of the 
“various committees” formed under Harris’s bylaws “to review and 
evaluate the provision of medical care, including the performance of the 
physicians.” The Director of Continuous Improvement’s affidavit goes on to 
state that the Quality Review Committee may perform a peer review evaluation of 
an incident underlying a health care liability claim and, in connection with a 
peer review, generates a “Peer Review File” containing confidential 
documentation that is not kept in the regular course of business. Therefore, the 
records and determinations of, and communications to, Harris’s Quality Review 
Committee are protected by the medical peer review committee privilege. See 
Tex. Occ. Code Ann. § 160.007(e); 
Tex. Health & Safety Code Ann. 
§ 161.032(f).
        The 
record is not clear as to which committee—the Risk Management Committee or the 
Quality Review Committee—conducted the investigation into Martinez’s 
morphine overdose.[4]  The in camera documents 
identified by Harris’s Director of Continuous Improvement as comprising the 
“Peer Review File” are the very same documents identified by the Risk 
Management Director as comprising the “Risk Management File.” Many of the in 
camera documents, however, are stamped “Risk Management Committee” or 
involve communications with Harris’s Risk Management Director. Even if these 
documents were forwarded to the Quality Review Committee, these risk management 
documents would not become protected by the peer review privilege simply because 
the Quality Review Committee had reviewed them. See Irving Healthcare Sys. v. 
Brooks, 927 S.W.2d 12, 18 (Tex. 1996). Therefore, because the affidavit of 
Harris’s Risk Management Director is insufficient to establish the 
applicability of the medical peer review committee privilege to the Risk 
Management Committee, Harris may not assert the peer review privilege to 
withhold from discovery any investigation or documents generated by the Risk 
Management Committee.
Medical committee privilege
        The 
peer review privilege is not the only confidentiality afforded hospitals, 
however; in addition, the medical committee privilege protects records and 
proceedings of a “medical committee” unless the records are “made or 
maintained in the regular course of business by a hospital.” Tex. Health & Safety Code Ann. § 
161.032(a), (d), (f). A "medical committee" is broadly defined and 
includes "any committee . . . of a hospital." Id. § 
161.031(a)(1). The affidavit of Harris’s Risk Management Director does 
sufficiently show that the Risk Management Committee is a committee of Harris 
Methodist Fort Worth Hospital. Therefore, because the Risk Management Committee 
qualifies as a “medical committee” under the statute, its records and 
proceedings that are not made in the regular course of business are confidential 
and not subject to discovery. See id. § 161.032(a).
        Martinez 
argues that Harris’s investigation is subject to discovery because it was 
conducted in the regular course of business. A Harris nurse testified at her 
deposition that she and another nurse filled out an incident report after 
Martinez’s morphine overdose and gave it to their department manager; the 
nurse also testified that submitting an incident report was a “routine” 
matter. However, this incident report states on its face that it is a 
“CONFIDENTIAL COMMITTEE REPORT” and “Not part of the Medical Record” and 
that copying the report is prohibited; therefore, it was clear to the nurses 
filling out the report that it was to be submitted to a medical committee and 
that it was not the type of document normally kept in a patient’s file.
        Hospital 
records that are not privileged because they are made in the regular course of 
business are those “kept in connection with the treatment of the individual 
patients as well as the business and administrative files and papers apart 
from committee deliberations.” Texarkana Mem’l Hosp., Inc. v. Jones, 
551 S.W.2d 33, 35 (Tex. 1977) (emphasis added). This incident report was not 
made for Martinez’s individual patient record; instead, it was made 
specifically for a medical committee’s use. Because any investigation 
commissioned by the Risk Management Committee would have been conducted for the 
committee’s purposes, the documents and proceedings generated by the 
investigation would be protected by the medical committee privilege. See Tex. Health & Safety Code Ann. § 
161.032(a); Jordan v. Fourth Court of Appeals, 701 S.W.2d 644, 648 (Tex. 
1985) (holding that medical committee privilege “extends to documents that 
have been prepared by or at the direction of the committee for committee 
purposes”); In re WHMC, 996 S.W.2d 409, 412 (Tex. App.—Houston [14th 
Dist.] 1999, orig. proceeding) (“[I]nformation is protected by the hospital 
committee privilege if sought out by or brought to the attention of the 
committee for purposes of an investigation, review, or other deliberative 
proceeding.”).
        In 
summary, the Peer Review File and any investigation conducted by Harris’s 
Quality Review Committee are protected by the medical peer review committee 
privilege and are not subject to discovery; the Risk Management File and any 
investigation conducted by the Risk Management Committee are protected by the 
medical committee privilege and are not subject to discovery. Therefore, the 
trial court did not err in ordering that the in camera documents and 
details of the investigation were not subject to discovery. The fact that Harris 
asserted only the peer review privilege, and not the medical committee 
privilege, in refusing to answer deposition questions relating to the 
investigation does not require us to overrule the trial court’s order with 
regard to any investigations conducted by the Risk Management Committee. See 
State Bar of Tex. v. Evans, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (holding 
that an appellate court must uphold an evidentiary ruling if there is any 
legitimate basis for the ruling, even if the legitimate basis was not urged in 
the trial court). Furthermore, because the medical committee privilege protects 
all records and proceedings of the Risk Management Committee, Harris was not 
required to assert an “investigative privilege,” as Martinez claims.
        Martinez 
argues that allowing Harris’s Risk Management Committee to claim privilege 
over its investigation is a “gross overreaching of the statutes.” To the 
contrary,
 
[w]e 
see it to be our responsibility to apply this statute exactly as the Legislature 
has written it. If the “records and proceedings of any hospital committee” 
are confidential and beyond the reach of court subpoena, then the deliberations 
of every group of persons constituted by the rules and bylaws of the hospital in 
its service is placed behind the veil.

 
Texarkana 
Mem’l Hosp., 551 S.W.2d at 35. The improvement of medical treatment is 
served by the “free and uninhibited discussion of all events and experiences 
within the hospital,” and the medical committee privilege serves this goal by 
encouraging open and thorough investigation. Id. Furthermore, the statute 
does not prohibit discovery from other sources; Martinez is free to conduct her 
own investigation into the incident, gathering factual information from Harris 
employees who were present at the time. What she cannot do, however, is force 
Harris to divulge the information its Risk Management Committee has gathered in 
the course of committee proceedings; rather, she must seek evidence from 
alternative, nonprivileged sources. See id. at 36 (“The presentation of 
evidence or opinion to a [h]ospital committee during its deliberations does not 
thereby make that evidence or opinion privileged if offered or proved by means 
apart from the record of the committee.”); cf. Irving Healthcare, 
927 S.W.2d at 12, 18 (stating that deposition questions inquiring about 
communications to a peer review committee and what the committee considered are 
objectionable).
        Because 
the medical committee privilege applies to the Risk Management Committee’s 
records and proceedings, we uphold the trial court’s discovery order and 
overrule Martinez’s first five issues on appeal.
III. EFFECT OF PRIVILEGE LIMITATIONS AND ALLEGED 
SPOLIATION ON
DISMISSAL AND SUMMARY JUDGMENT RULINGS
        In 
her sixth through tenth issues, Martinez argues that the trial court erred in 
granting Harris’s and Abbott’s summary judgment motions and Harris’s 4590i 
motion to dismiss because the trial court’s privilege ruling and Harris’s 
spoliation of evidence relating to the PCA pump denied her an adequate 
opportunity for discovery and violated the open courts provision of the Texas 
Constitution. Martinez also argues in her thirteenth issue that the trial court 
erred in granting Harris’s summary judgment motion because the record 
contained evidence of spoliation committed by Harris. Martinez failed to present 
her open-courts challenge to the trial court, so she has not preserved this 
argument for our review. See S.W. Elec. Power Co. v. Grant, 73 S.W.3d 
211, 222 (Tex. 2002).[5]
        Harris 
argues that Martinez has also waived her spoliation complaint because she did 
not properly raise the issue or obtain a ruling in the trial court. See Tex. R. App. P. 33.1(a)(1)(A). Although 
Martinez pleaded spoliation as a cause of action in her petition, Harris asserts 
that the spoliation issue was not properly before the trial court because Texas 
does not recognize spoliation of evidence as an independent tort. See Trevino 
v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998).
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling, if they are not apparent from the context of the 
request, objection, or motion. Tex. R. 
App. P. 33.1(a); see also Tex. 
R. Evid. 103(a)(1). The objecting party must get a ruling from the trial 
court. This ruling can be either express or implied. Frazier v. Yu, 987 
S.W.2d 607, 610 (Tex. App.—Fort Worth 1999, pet. denied). The record shows 
that Martinez’s spoliation argument was sufficiently specific to make the 
trial court aware of her complaint: Martinez asserted in her petition that 
Harris’s failure to identify, isolate, or test the PCA pump and failure to 
download the dosage history “destroyed by omission and commission the ability 
to determine what occurred with reference to this infusion pump on the occasion 
in question and proximately caused damage to Plaintiff’s ability to prosecute 
this lawsuit.”
        The 
intentional destruction of evidence may, in the trial court’s discretion, give 
rise to a presumption that the destroyed evidence would not have been favorable 
to the spoliator. Ordonez v. M.W. McCurdy & Co. Inc., 984 S.W.2d 264, 
273 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Although Martinez did not 
specifically request a spoliation presumption, the trial court implicitly denied 
Martinez any relief as to her spoliation complaint by granting summary judgment 
to Harris and Abbott. Because Martinez included a spoliation claim in her 
petition and presented summary judgment evidence that Harris failed to identify, 
test, and download information from the PCA pump involved, and the trial court 
nevertheless granted summary judgment, we presume that the trial court 
considered and rejected her spoliation complaint since a spoliation presumption 
would have precluded summary judgment. See Aguirre v. S. Tex. Blood & 
Tissue Ctr., 2 S.W.3d 454, 457 (Tex. App.—San Antonio 1999, pet. denied). 
We review the trial court’s decision under an abuse of discretion standard. See 
Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d 718, 722-23 (Tex. 2003).
        Martinez 
argues that a no-evidence summary judgment movant’s alleged spoliation of 
evidence denies the nonmovant an “adequate time for discovery,” asserting 
that it is impossible for a nonmovant to meet rule 166a(i)’s requirement of 
providing summary judgment evidence when the movant has wrongly destroyed the 
very evidence needed to meet that requirement. Tex. R. Civ. P. 166a(i). However, 
Martinez does not show that Harris’s failures to identify the PCA pump 
involved in the incident and download information from the pump itself were 
wrongful in anyway.
        To 
raise the spoliation issue, Martinez bore the burden of establishing that Harris 
had a duty to preserve evidence relating to the PCA pump. See Wal-Mart, 
106 S.W.3d at 722. This duty arises only when a party knows or reasonably should 
know that there is a substantial chance that a claim will be filed and that 
evidence in its possession or control will be material and relevant to that 
claim. Id.; cf. Nat’l Tank Co. v. Brotherton, 851 S.W.2d 
193, 204 (Tex. 1993) (orig. proceeding) (holding that courts must examine the 
“totality of the circumstances” in making an objective determination of 
whether litigation was anticipated). After reviewing all the circumstances 
surrounding the incident, we conclude that, under the facts of this case, Harris 
had no duty to isolate or download information from the PCA pump because nothing 
about the circumstances surrounding the incident would have put Harris on notice 
that there was a substantial chance that Martinez would pursue a claim. See 
Wal-Mart, 106 S.W.3d at 722.
        The 
summary judgment evidence shows that a Harris nurse found Martinez sedated and 
unresponsive to verbal stimuli while being administered morphine through the PCA 
pump. The nurse testified in her deposition that, although Martinez was 
unresponsive, her respiration and vital signs were normal. The nurse testified 
that Martinez was immediately administered medicine and “was okay after 
that”—sitting up, talking, and walking within a few minutes. The nurse 
further testified that she monitored Martinez throughout the rest of the day, 
and Martinez did not exhibit any signs of respiratory depression. The nurse did 
not believe the pump malfunctioned because she “pulled up the history [of the 
morphine amounts delivered by the pump] and everything was correct,” and the 
history was consistent with the amount of medication ordered by the physician. 
Harris employees returned the pump to the hospital pharmacy’s storage room, as 
was the normal practice when a patient had finished using a pump; they did not 
destroy or conceal the pump after the incident.
        In 
short, the summary judgment evidence shows that Martinez’s husband pushed the 
PCA pump button throughout the night following her surgery, even while she was 
asleep; that Martinez was unresponsive for a few minutes, but her vital signs 
were not affected; that Harris determined the PCA pump neither had malfunctioned 
nor was misprogrammed; and that Martinez did not appear to suffer any ill 
effects from her brief unresponsiveness. Martinez’s expert report opines that 
“it was below the standard of care for the hospital to fail to identify and 
isolate this pump, test it, and archive a copy of the historical download,” 
but, considering the totality of the circumstances, this opinion provides no 
reason that Harris should have known that Martinez would sue them over this 
incident. Under these facts, we agree with Harris that there was no reason to 
isolate the PCA pump or download the information because nothing indicated to 
Harris that the PCA pump malfunctioned or was misprogrammed or that Martinez 
suffered any harm from her brief period of unresponsiveness. Therefore, because 
Martinez produced no evidence giving rise to a duty on Harris’s part to 
preserve evidence relating to the PCA pump, we conclude that the trial court did 
not abuse its discretion in rejecting Martinez’s spoliation complaint. See 
Wal-Mart, 106 S.W.3d at 722-23 (holding spoliation presumption unwarranted 
when decorative reindeer that fell on plaintiff’s head was disposed of in the 
normal course of business because plaintiff did not seem seriously injured and 
did not indicate that he might seek legal relief); Aguirre, 2 S.W.3d at 
457-58 (holding spoliation presumption unwarranted when blood bank destroyed 
donor records in the regular course of its business; blood bank had no 
reasonable expectation that litigation would arise from the transfusion at the 
center of the lawsuit).
        Because 
we conclude that Harris did not wrongly destroy evidence relating to the PCA 
pump, and because we have previously concluded that the trial court did not err 
in ruling that the records and proceedings of Harris’s investigation were not 
subject to discovery, Martinez was not improperly denied an adequate opportunity 
for discovery. Therefore, Martinez cannot argue that any lack of discovery 
requires us to reverse the trial court’s rulings on the motions for summary 
judgment and the motion to dismiss. We overrule issues six through ten of 
Martinez’s appeal. Likewise, because Martinez was not entitled to a spoliation 
presumption, Martinez cannot argue that any evidence of Harris’s failure to 
test or download information from the PCA pump required the trial court to deny 
Harris’s motion for summary judgment. Therefore, we overrule Martinez’s 
thirteenth issue as well.
IV. EXPERT REPORT
        In 
her eleventh issue, Martinez argues that the trial court erred in granting 
Harris’s motion to dismiss because her expert report was a good-faith attempt 
to comply with the statutory requirements, given the limitations of the trial 
court’s privilege ruling and Harris’s failure to preserve evidence. We 
review a trial court’s ruling concerning an expert report filed under article 
4590i, § 13.01 under an abuse of discretion standard. Am. Transitional Care 
Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001). Because 
Martinez filed an expert report that fails to provide a basis for the trial 
court to determine that her claims have merit, we conclude that the trial court 
did not err in dismissing her suit.
        Section 
13.01 requires medical malpractice plaintiffs, within 180 days of filing suit, 
either to provide each defendant physician and health care provider with an 
expert report and the expert’s curriculum vitae or to nonsuit the claims. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 
13.01(d). A defendant may move to challenge the adequacy of the plaintiff’s 
report, and the trial court must grant the motion if "it appears to the 
court . . . that the report does not represent a good faith effort to comply 
with the definition of an expert report." Id. § 13.01(l).
        The 
statutory definition of “expert report” requires a fair summary of the 
expert’s opinions about the applicable standard of care, the manner in which 
the care failed to meet that standard, and the causal relationship between that 
failure and the claimed injury. Tex. Rev. 
Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). Because the purpose of 
article 4590i is to curtail frivolous claims against physicians and other health 
care providers, see Hart v. Wright, 16 S.W.3d 872, 876 (Tex. 
App.—Fort Worth 2000, pet. denied), the expert report must provide a basis for 
the trial court to conclude that the claims have merit. Palacios, 46 
S.W.3d at 879. The expert report submitted by Martinez, however, makes clear 
that Martinez does not have sufficient evidence to substantiate the theories of 
recovery underlying her claims. In the report, the expert states that, due to 
Harris’s failure to preserve evidence and claims of privilege, he has no 
opinion about the quality of care provided to Martinez in this case.
        Instead, 
the only opinion expressed by Martinez’s expert is that “it was below the 
standard of care for the hospital to fail to identify and isolate this pump, 
test it, and archive a copy of the historical download.” The opinion does not, 
however, go on to show a causal relationship between this breach of the standard 
of care and the injury suffered by Martinez. Instead, the opinion links the 
breach with potential harm to patients other than Martinez and with 
Martinez’s evidentiary difficulties in this lawsuit: “This posed an 
unnecessary danger to subsequent patients and prevented an accurate medical 
record in this case.” This opinion does not satisfy the causal connection 
required by the statute. See Tex. 
Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6).
        Section 
13.01 contains no exception to the expert report requirement, so Martinez’s 
expert’s reasons for failing to provide an opinion on the medical treatment 
provided in this case do not excuse Martinez’s noncompliance with the statute. 
Id. § 13.01. We have previously concluded that Harris’s failure to 
preserve evidence about the PCA pump was not wrongful and that the Risk 
Management Committee’s documents and proceedings are statutorily exempt from 
discovery; therefore, this report indicates only that Martinez cannot 
substantiate her claims with any properly discoverable evidence. Because 
unsubstantiated claims are the very type of danger that article 4590i’s 
provisions were intended to address, and because Martinez’s expert report did 
not provide any basis upon which the trial court could conclude that her claims 
had merit, the report did not represent a good-faith effort to comply with the 
statutory requirements. We overrule Martinez’s eleventh issue.
V. SUMMARY JUDGMENT
        Finally, 
in her twelfth issue, Martinez argues that the trial court erred in granting 
Harris’s motion for summary judgment because Martinez carried her burden of 
proof under rule 166a(i). Tex. R. Civ. P. 
166a(i). However, with no expert testimony or other evidence before the trial 
court that either Harris or Abbott caused Martinez’s injuries, the court was 
correct in granting summary judgment against Martinez.
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense. Id. The motion must specifically state the elements for which 
there is no evidence. Id.; Johnson v. Brewer & Pritchard, P.C., 73 
S.W.3d 193, 207 (Tex. 2002). The trial court must grant the motion unless the 
nonmovant produces summary judgment evidence that raises a genuine issue of 
material fact. See Tex. R. Civ. P. 
166a(i) & cmt.; S.W. Elec. Power Co., 73 S.W.3d at 215.
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered. Johnson, 73 S.W.3d at 197; Morgan 
v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). If the nonmovant brings forward 
more than a scintilla of probative evidence that raises a genuine issue of 
material fact, then a no-evidence summary judgment is not proper. Moore v. K 
Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).
        Pursuant 
to rule 166a(i), Harris moved for summary judgment on the grounds that Martinez 
presented “no evidence of a reasonably close causal connection between the 
alleged breach of the standard of care and the alleged injury.” In a medical 
malpractice action, the plaintiff must establish causation based upon a 
"reasonable medical probability" and not mere conjecture, speculation, 
or possibility. Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 
(Tex. 1995); Marvelli v. Alston, 100 S.W.3d 460, 470 (Tex. App.—Fort 
Worth 2003, pet. denied). On appeal, Martinez asserts that the trial court erred 
in granting summary judgment to Harris because the two expert opinions she 
submitted in response “are clear that the overdose incident caused Martinez 
damage.”
        However, 
the ultimate standard of proof on the causation issue is “whether, by a 
preponderance of the evidence, the negligent act or omission is shown to 
be a substantial factor in bringing about the harm and without which the harm 
would not have occurred." Park Place Hosp., 909 S.W.2d at 511 
(emphasis added). In a medical malpractice action, expert testimony is required 
to prove medical negligence unless the form of treatment is a matter of common 
knowledge or within the experience of a layperson. See Hood v. Phillips, 
554 S.W.2d 160, 165-66 (Tex. 1977); Arlington Mem’l Hosp. Found., Inc. v. 
Baird, 991 S.W.2d 918, 922 (Tex. App.—Fort Worth 1999, pet. denied). While 
a morphine overdose may have injured Martinez, the record contains no evidence 
linking the overdose to any negligent act or omission established by expert 
testimony as attributable to Harris. Without this evidence, Martinez cannot 
establish that Harris’s negligence caused her injuries, an essential element 
of her claims against Harris. We overrule Martinez’s twelfth issue.
VI. CONCLUSION
        Martinez’s 
expert report provided no basis for trial court to determine that her claims had 
merit, and Martinez produced no evidence showing that any negligence of either 
Harris or Abbott caused the injuries that she attributes to the morphine 
overdose incident. Therefore, the trial court did not err in granting Harris’s 
motion to dismiss and Harris’s and Abbott’s motions for summary judgment. 
Having overruled all Martinez’s issues on appeal, we affirm the trial 
court’s judgment.
 
                                                          BOB 
MCCOY
                                                          JUSTICE

PANEL 
F:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: 
August 31, 2004


NOTES
1.  
See Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01, 1995 
Tex. Gen. Laws 985, 985-87, repealed by Act of June 2, 2003, 78th Leg., 
R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (current version at Tex. Civ. Prac. & Rem. Code § 74.35 
(Vernon Supp. 2004-05)). The former statute continues in effect for application 
to cases like this one, filed before the new Act’s September 1, 2003 effective 
date. See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 
Tex. Gen. Laws 847, 884. Therefore, all references hereinafter to Tex. Rev. Civ. Stat. Ann. art. 4590i are 
to the former statute.
2.  
The two nonprivileged documents were emails regarding Martinez’s request for a 
copy of her medical records.
3.  
Specifically, Harris responded as follows:
[T]his 
request seeks information and materials exempted and protected from discovery 
under the Texas Medical Practice Act, 
Tex. Rev. Civ. Stat. Ann. art. 
4495b et seq., Art. 4525b, recently recodified as Sections 151.001 et 
seq. of the Texas Occupations Code; 
Art. 4525b, Tex. Rev. Civ. Stat. Ann., 
recently recodified as Sections 303.001 et seq., Texas Occupations Code 
§ 160.001 et seq. of the Texas 
Occupations Code; Texas Health and 
Safety Code, § 161.031-033; and 42 U.S.C.A. § 11101 et seq.
4.  
Although Martinez claims that only the Risk Management Committee conducted the 
investigation, the stipulation in the record upon which Martinez bases this 
assertion is unsigned.
5.  
Harris and Abbott also contend that Martinez has not preserved these issues for 
appeal because she did not file either an affidavit explaining the need for 
further discovery or a verified motion for continuance. See Tenneco 
Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647 (Tex. 1996). But the trial 
court had already held that the discovery desired by Martinez, the Risk 
Management Committee’s investigation and file, was privileged, and an 
extension of the discovery period would not have addressed Martinez’s 
complaint that Harris failed to preserve the evidence she sought regarding the 
PCA pump. Therefore, we cannot conclude that Martinez waived these issues by 
failing to present what would have been a pointless request. See City of 
Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex. 1987) (“[A] court should not 
require the doing of a useless thing.”).