**In re the METHODIST HOSPITAL, Relator.**

**No. 01–97–00310–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 27, 1998.

Elena DiIorio, Catherine B. Smith, Anne M. Pike, Houston, for Appellants.

Before MIRABAL, WILSON, and TAFT, JJ.

## OPINION

MIRABAL, Justice.

In this original proceeding, we must determine whether certain documents containing data relating to hospital infection rates are exempt from discovery under TEX. HEALTH & SAFETY CODE ANN. § 161.032 (Vernon Supp. 1998), or TEX.REV.CIV. STAT. ANN. art. 4495b, § 5.06 (Vernon Supp.1998). The decisive issue is whether the trial court abused its discretion in concluding the documents are discoverable under an exception to privilege because they were "made or maintained in the regular course of business by a hospital."

Relator, The Methodist Hospital (Methodist), seeks mandamus relief from respondent Judge Wittig's [1] order of March 27, 1997, that compels Methodist to produce infectious disease reports it claims are privileged under section 161.032 and article 4495b, section 5.06.

### Background and Procedural History

Linda and Edward Jacobson, the real parties in interest, and Methodist are in agreement about the procedural history of the case. The Jacobsons sued Methodist and two other defendants,[2] alleging that as a result of surgery at Methodist to repair a broken leg, Mrs. Jacobson contracted a pseudomonas infection in the leg. The infection became so severe that it created a softball-sized hole through her leg, necessitating further surgery, transplant procedures, and antibiotic therapy. The Jacobsons asserted causes of action for negligence and negligent failure to disclose the risks and hazards of the surgery and sought actual and exemplary damages.

In December 1995, the Jacobsons gave notice of intention to take oral deposition with subpoena duces tecum of Fran Slater, a nurse employed by Methodist. One of the categories of documents requested under the subpoena was:

> 9. Adverse Reaction—Infectious Disease reports: any and all reports concerning the occurrence of infectious diseases of any type and all experience reports concerning the care and treatment of pseudomonas in the Methodist hospital.

Methodist objected to category nine on the grounds that the items were privileged under the hospital committee and peer review statutes,[3] and the Texas Medical Practice Act.[4] Methodist said that there was a specific infection control committee at Methodist, and materials prepared under its supervision and direction were privileged under the statutes.

The Jacobsons moved to compel Methodist to respond fully and completely to the subpoena duces tecum. Methodist again responded that the category nine documents were privileged from discovery under the hospital and peer review committee statutes and moved for a protective order allowing it not to produce any of the category nine documents sought by the Jacobsons. In support, Methodist offered two affidavits of Dr. Richard Harris. Methodist also produced seven pages of documents for in camera review by Judge Wittig, indicating those seven pages were then available for review; other covered documents have not been submitted for in camera review.

There was a hearing on the motion to compel. It is uncontested that at the hearing, the attorney for the Jacobsons presented to Judge Wittig portions of the deposition

---

1. The Honorable Don. E. Wittig, judge of the 125th District Court, Harris County, Texas.

2. *Jacobson, et al. v. The Methodist Hosp., et al.,* cause no. 94–022037 (Dist. Ct. of Harris County, 125th Dist. of Texas).

3. TEX. HEALTH & SAFETY CODE ANN. § 161.032 (Vernon Supp.1998).

4. TEX.REV.CIV. STAT. ANN. art. 4495b, § 1.01 (Vernon Supp.1998).

testimony of the nurse, Fran Slater.[5] After the hearing, Judge Wittig signed an order granting the Jacobsons' motion to compel and denying Methodist's motion for protective order. The order specifically states, in a handwritten interlineation:

> The court finds documents kept in regular course of business. Methodist Hospital ordered to produce documents under separate confidentiality agreed order to plaintiff. . . .

## Standard of Review

Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). In considering whether an abuse of discretion has occurred, we must determine if the party asserting the privilege has discharged its burden of proof. *Barnes v. Whittington*, 751 S.W.2d 493, 494 (Tex.1988) (orig.proceeding). The party claiming privilege bears the burden of producing evidence to support its contention that the documents in question qualify for the privilege claimed as a matter of law. *Id.* If the party asserting a medical records privilege submits sufficient evidence, the burden shifts to the other party to either controvert the evidence, show that the privilege was waived, or show that the documents were made in the ordinary course

of business. *Arlington Memorial Hosp. Found., Inc. v. Barton*, 952 S.W.2d 927, 930 (Tex.App.—Fort Worth 1997, orig. proceeding).

## Privilege

*Subject to the exception for records made or maintained in the regular course of business,* the "records and proceedings" of a "medical committee"[6] are confidential and not subject to subpoena. TEX. HEALTH & SAFETY CODE ANN. § 161.032(a) and (c) (Vernon Supp.1998).

Further, *subject to the exception for records made or maintained in the regular course of business,* all proceedings and records of a medical peer review committee are confidential, and all communications made to a medical peer review committee[7] are privileged. TEX.REV.CIV. STAT. ANN. art. 4495b, § 5.06(g) (Vernon Supp.1998).

The exception for records made or maintained in the regular course of business appears in section 161.032(c), which reads: "This section [§ 161.032] and section 5.06 Medical Practice Act (Article 4495b, Vernon's Texas Civil Statutes) do not apply to records made or maintained in the regular course of business by a hospital. . . ." TEX. HEALTH & SAFETY CODE ANN. § 161.032(c) (Vernon Supp.1998).[8]

---

5. Relator has not filed in this Court a reporter's record of the hearing. Both parties agree that no record was made of the hearing. Normally, in the absence of a reporter's record, we would presume the evidence supports the trial court's ruling. *Ex parte Brister*, 801 S.W.2d 833, 839 (Tex.1990); *Manahan v. Meyer*, 862 S.W.2d 130, 135 (Tex.App.—Houston [1st Dist.] 1993, writ denied). However, because a transcript of nurse Slater's deposition has been filed in this Court by the Jacobsons, we will consider it and rule on the merits of the issue presented, rather than simply denying relief due to the absence of a reporter's record.

6. A medical committee is broadly defined and includes any committee of a hospital. TEX. HEALTH & SAFETY CODE ANN. § 161.031 (Vernon 1992 & Supp.1998).

7. A medical peer review committee is a committee of a hospital, provided the committee operates pursuant to written bylaws that have been

approved by the policy-making body or the governing board of the hospital and authorized to evaluate the quality of medical and health-care services or the competence of physicians. TEX REV. CIV. STAT. ANN art. 4495b, § 1.03(6) (Vernon Supp.1998).

8. It should be noted that the denial of privilege for records made or maintained in the regular course of business under section 161.032(c) was not applied to section 5.06 of article 4495b until 1993. Act of June 10, 1993, 73rd Leg., R.S., ch. 625, § 6, 1993 Tex. Gen. Laws 2347, 2350. *See Memorial Hosp.—The Woodlands v. McCown*, 927 S.W.2d 1, 9 (Tex.1996) (orig.proceeding) (as of Sept. 1, 1993, legislature amended section 161.032 to add that section 5.06 of article 4495b also does not apply to records made or maintained in the ordinary course of business). Records should now be accorded the same treatment under both statutes in determining if they were made or maintained "in the regular course of business." 927 S.W.2d at 11.

### Analysis

For purposes of this opinion, we conclude that the records involved are confidential and privileged records that are *not* subject to discovery *unless* they were "made or maintained in the regular course of business" of Methodist. In other words, we conclude that Methodist, the party claiming the privilege, met its initial burden to show the involved documents qualify for the privilege. Methodist discharged its burden of proof through two affidavits of Dr. Richard Harris, Director of the Infection Control Program at Methodist. The issue in this case is whether the Jacobsons responded with sufficient controverting evidence from which the trial court could have reasonably found that the documents lost their otherwise-privileged status as a result of their having been made or maintained in the regular course of business of the hospital. The Jacobsons claim they met their burden through the deposition testimony of Fran Slater, Assistant Manager of the Infection Prevention and Control Function at Methodist.

■ The Texas Supreme Court says that the statutory language "records made or maintained in the regular course of business" means "records kept in connection with the treatment of [a hospital's] individual patients as well as the business and administrative files and papers apart from committee deliberations." *Memorial Hosp.—The Woodlands v. McCown,* 927 S.W.2d 1, 10 (Tex. 1996) (orig.proceeding) (quoting *Texarkana Memorial Hosp., Inc. v. Jones,* 551 S.W.2d 33, 35 (Tex.1977) (orig.proceeding)). The privilege does not prevent discovery of material that has been presented to a hospital committee *if it is otherwise available* and is offered or proved by means apart from the record of the committee. *Id.*

In the present case, the evidence shows the following:

Methodist has a Hospital Quality Assurance Department, which oversees Methodist's Infection Control Department, which has a smaller body, the Infection Control Committee, which gives guidance and direction to the Infection Control Department. An organizational chart is helpful:

*Hospital Quality Assurance Department*

*Infection Control Department*

*Infection Control Committee*

The Infection Control Committee has the responsibility for the investigation of infections within the hospital and makes recommendations regarding the control and prevention of infections. The committee is composed of at least eight members, including doctors and nurses. The committee develops policies and guidance for the operation of the Infection Control Department.

The function of the Infection Control Department is to gather data hospital wide on infection issues and compile it into meaningful information. Infectious disease reports, like those involved in the present case, are generated at the direction of the Infection Control Committee and are reviewed by the committee as part of its process to evaluate and elevate the standard of patient care.

Fran Slater, in response to questions regarding the subpoenaed documents, testified that patient specimens are routinely sent to the hospital lab. The Infection Control Department receives from the hospital lab on a daily basis a computer print-out of all positive culture reports. The print-out identifies patient names and room numbers. The print-out is given to the nurses in the department, and they review the patient charts. At the end of each month, they develop an aggregate report of all hospital-acquired infections the nurses have identified based on the patient chart reviews and the lab computer print-outs of positive cultures. Documents produced by the department are sent *not only* to members of the Infection Control Committee, *but also to* members of the Medical Staff Quality Management Committee, members of the Executive Committee, the medical staff, and the Hospital Board of Directors. All of those individuals see some form of the documents, though not everybody sees everything.

The specific documents sought by the Jacobsons are:

*any and all reports* concerning the occurrence of infectious diseases of any type and all experience reports concerning the care

and treatment of pseudomonas in the Methodist Hospital.

Methodist submitted for in camera inspection *certain* of the described documents "to the extent they are available." From the record, it is clear other relevant documents, in addition to the in camera documents, are covered by the production request. It was Methodist's position in the trial court that *none* of the infectious disease reports generated by the Infection Control Department were subject to discovery.

■ Based on the evidence, the trial court specifically concluded that the involved documents were "kept in the regular course of business" of Methodist. From our review of the evidence, we conclude the trial court did not abuse its discretion.

From the evidence, the trial court could have reasonably concluded that the evidence supports a finding that the information in the infection surveillance reports was in *"administrative files apart from* [Infection Control] Committee deliberations." The trial court could have reasonably concluded that, even though the information in the infection surveillance reports had been presented to the committee, it had also been presented simultaneously to other groups who were not part of the Committee, and therefore the reports could be proved up by means apart from the record of the committee.[9]

Accordingly, pursuant to the supreme court's definition in *Memorial Hosp.—The Woodlands,* 927 S.W.2d at 10, the trial court did not abuse its discretion in concluding the subpoenaed documents are "records made or maintained in the regular course of business" and are, therefore, discoverable.

We deny the petition for writ of mandamus.

---

9. We note that in his affidavit, Dr. Harris stated that the *seven pages* submitted for in camera review were accessible only to members of the Infection Control Committee and personnel at the Infection Control Department. Dr. Harris did not make the same representation with regard to the regular monthly infection reports generated by the department over the years. *All* of the infectious disease reports were covered by the subpoena, not just the seven pages that "were available" for production as of the time Methodist objected. Further, the trial court was not bound to believe Dr. Harris's affidavit with regard to the specific seven pages; from Fran Slater's deposition testimony, it was not unreasonable for the trial court to conclude that even the seven pages likely were disseminated to departments and groups *other than* the committee.