**In re WHMC d/b/a Columbia West Houston Medical Center, Relator.**

No. 14–99–00556–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1999.

410 ■ 

Richard Sheehy, Houston, for appellants.

Michael J. Solar, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

**OPINION**

PAUL C. MURPHY, Chief Justice.

This discovery mandamus involves the application of the hospital committee privilege and peer review privilege in a wrongful death and survival action. Because relator, WHMC d/b/a Columbia West Houston Medical Center, presented uncontroverted proof of privilege, we grant mandamus relief without hearing oral argument. *See* TEX.R.APP. P. 52.8(c).

The real parties in interest, Abdol Reza "Ray" Razmdideh and Neda Vahidi, Individually and as Representatives of the Estate of Azin April Razmdideh, filed the underlying wrongful death and survival action in the 113th District Court of Harris County. The real parties allege negligence and gross negligence by relator and other health-care providers in the treatment of their twenty-eight month-old daughter, Azin, who was suffering from severe dehydration. Specifically, the real parties allege that relator's four-hour delay in treating Azin caused her death in September 1997.

In request number twenty-three of their first set of requests for production, the real parties sought "all documents regarding Columbia's 'performance improvement' project relating to decreasing the amount of time patients spend in the emergency room." Relator timely objected to this request on the grounds that it was overbroad, vague, and sought documents protected by the peer review and/or hospital committee privilege. *See* TEX.REV.CIV. STAT. ANN. Art. 4495b (Vernon Supp.1999); *see also* TEX. HEALTH & SAFETY CODE ANN. §§ 161.031–161.033 (Vernon 1992 & Supp. 1999). The real parties filed a motion to compel. Relator filed a motion for protective order and a response to the motion to compel asserting that the documents were of peer review and/or hospital committees and, therefore, were privileged. The response was supported by the affidavit of relator's risk manager, Sue Grochocki, and

a copy of the bylaws of relator's board of trustees.

At the hearing on the motion to compel, the trial court orally requested relator to tender documents responsive to request number twenty-three for an *in camera* inspection. A review of the reporter's record and of the documents themselves shows that relator tendered: (1) the 1997–98 minutes of several ER Special Care Committee meetings reviewing the data from the performance improvement project known as "Best Demonstrated Practices" and (2) the project's final report entitled, "Emergency Department BDP." The trial court later put its request for the documents into a signed, written order. By letter to the parties dated May 10, 1999, the trial court advised relator that it intended to order production of the documents tendered *in camera* in response to request number twenty three. On May 19, 1999, the trial court signed a written order that, in part, required relator to produce those documents the following day.[1] By rule 11 agreement, the parties agreed to stay the trial court's order pending relator's filing of a petition for writ of mandamus. On May 25, 1999, relator filed its petition.

■ Mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues, when there is no adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses it discretion by making an arbitrary and unreasonable decision that amounts to a clear and prejudicial error of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). When asserting the trial court clearly abused its discretion in resolving factual issues, the relator must establish that the trial court could reasonably have reached only one decision. *See Walker*, 827 S.W.2d at 840. When asserting the

trial court clearly abused its discretion in determining legal principles, the relator must show a clear failure by the trial court to analyze or apply the law correctly. *See id.* Here, relator complains the trial court clearly misapplied the law by ordering the production of privileged documents. It is well-settled that an erroneous order requiring the production of privileged documents leaves the party claiming privilege without an adequate remedy by appeal and thus, may be corrected by mandamus. *See Memorial Hosp.–The Woodlands. v. McCown*, 927 S.W.2d 1, 12 (Tex.1996); *see also Brownwood Regional Hosp. v. Eleventh Court of Appeals*, 927 S.W.2d 24, 27–28 (Tex.1996).

■ In considering whether an abuse of discretion occurred, we must determine if the party asserting the privilege has discharged its burden of proof. *See Barnes v. Whittington*, 751 S.W.2d 493, 494 (Tex.1988); *see In re Methodist Hosp.*, 982 S.W.2d at 112, 114 (Tex.App.-Houston [1st Dist.] 1998, orig. proceeding). The party claiming privilege bears the burden of producing proof to support its contention that the documents in question qualify for the privilege claimed as a matter of law. *See Methodist Hosp.*, 982 S.W.2d at 114. If the party asserting a medical records privilege submits sufficient proof, the burden shifts to the other party to either controvert that proof, show that the privilege was waived, or show that the documents were made in the ordinary course of business. *See id.*

■ The Texas Health & Safety Code provides that "records and proceedings of a medical committee are confidential and are not subject to court subpoena." TEX. HEALTH & SAFETY CODE ANN. § 161.032(a). A "medical committee" is broadly defined and includes "any committee ... of a hospital." *Id.* at § 161.031(a)(1); *see Methodist Hosp.*, 982 S.W.2d at 116 n. 6. The "records and proceedings of a medical

---

1. The court's order required relator to produce other documents that were part of the discovery dispute below, but not within the scope of this mandamus proceeding.

committee" means "those documents generated by the committee in order to conduct open and thorough review." *Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 647–48 (Tex.1985). In general, "the [hospital committee] privilege extends to documents that have been prepared by or at the direction of the committee for committee purposes." *Id.* at 648; *see* TEX. HEALTH & SAFETY CODE ANN. § 161.032(b). This includes "minutes of committee meetings, correspondence between committee members relating to the deliberation process, and any final committee product such as recommendations." *Jordan,* 701 S.W.2d at 648.

■ The hospital committee privilege does not apply to documents gratuitously submitted to a committee or that were created without committee impetus and purpose. *See id.* Thus, the fact that a document was considered by a committee does not automatically transform that document into a committee record or proceeding. *See Texarkana Mem'l Hosp., Inc. v. Jones,* 551 S.W.2d 33, 36 (Tex.1977). Rather, information is protected by the hospital committee privilege if sought out by or brought to the attention of the committee for purposes of an investigation, review, or other deliberative proceeding. *See Barnes,* 751 S.W.2d at 496. The hospital committee privilege also does not apply to "records made or maintained in the regular course of business by a hospital." *Id.* at § 161.032(c). Such records include those "kept in connection with the treatment of individual patients as well as the business and administrative files and papers apart from committee deliberations." *Texarkana Mem'l,* 551 S.W.2d at 35.

Likewise, the Texas Medical Practice Act ("the Act") provides, with certain exceptions, that "all proceedings and records of a medical peer review committee are confidential, and all communications made to a medical peer review committee are privileged." TEX.REV.CIV. STAT. ANN. Art. 4495b § 5.06(g). Under the Act, a "medical peer review committee" is a committee of a health-care entity operating pursuant to approved written bylaws that is "authorized to evaluate the quality of medical and health-care services or the competence of physicians." *See Memorial Hosp.–The Woodlands,* 927 S.W.2d at 8 (citing Article 4495b § 1.03(a)(6)).

The Act also provides that "unless disclosure is required or authorized by law, records or determinations of or communications to a medical peer review committee are not subject to subpoena or discovery and are not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee." Article 4495b at § 5.06(j). The Act further provides that "in no event may ... reports and records received, maintained, or developed ... by a medical peer review committee, or by a member of such committee, or by a health care entity be available for discovery or court subpoena or introduced into evidence in a medical professional liability suit arising out of the provision of or failure to provide medical or health care services, or in any other action for damages." *Id.* at § 5.06(s)(3). The peer review committee privilege also does not apply to "records made or maintained in the regular course of business by a hospital" or to materials available by means apart from the record of the committee. TEX. HEALTH & SAFETY CODE ANN. § 161.032(c); *see Irving Healthcare v. Brooks,* 927 S.W.2d 12, 18–19 (Tex.1996).

■ Here, relator offered the only proof on the issue of privilege by way of the Grochocki affidavit, the bylaws of its board of trustees, and the documents themselves. Grochocki is an R.N. and has been relator's risk manager since December 1997. According to Grochocki, prior to the incident that is the basis for the underlying suit, relator established both the ER Special Care Committee and the Medical Executive Committee under its bylaws, which are approved by its board of trustees. Both committees operate under the bylaws and are authorized to evaluate

health care services for the purpose of improving the quality of patient care. The project known as "Best Demonstrated Practices" was assigned by relator's Performance Improvement Council (also established under the bylaws) to the ER Special Care Committee, with oversight by the Medical Executive Committee.

Grochocki averred that the documents sought in request for production number twenty-three relating to the performance improvement project were generated by and/or at the direction of the ER Special Care Committee and the Medical Executive Committee for the committee purposes of improving the quality of patient care. Grochocki also stated that these documents were not gratuitously submitted to the committees nor were they made without committee impetus and purpose. Grochocki further stated that the records and proceedings of the ER Special Care Committee and the Medical Executive Committee were not clinical charts or records made or kept for individual patients, but were maintained separately and could be easily distinguished from individual patient records. Grochocki averred that the records and proceedings of these committees were maintained in confidence to ensure candid discussion and improve the quality of care. Finally, Grochocki stated that only committee members were authorized to use or discuss records and proceedings generated by or at the direction of these committees, that only the chairman, vice-chairman, or secretary of the committees could waive the privilege in writing, and that none of these individuals had executed a written waiver.

■■■ A detailed affidavit that tracks the statutory language and is descriptive enough to be persuasive, but not so descriptive as to disclose the privileged information, is sufficient to raise and prove privilege. *See Arlington Memorial Hosp.*

*Found. v. Barton,* 952 S.W.2d 927, 929–30 (Tex.App.—Fort Worth 1997, orig. proceeding). Here, Grochocki's affidavit tracks the pertinent provisions of the Health & Safety Code and the Texas Medical Practice Act in identifying and describing the authority and function of the ER Special Care Committee and the Medical Executive Committee. It also states that the documents relating to the performance improvement project were generated by and/or at the direction of those committees for the committee purposes of improving the quality of patient care. Grochocki's affidavit is supported by the *in camera* documents themselves. While these documents are potentially relevant to the real parties' claims, the Legislature has balanced the need of an individual plaintiff for access to evidence against the need to improve the quality of health care in this state through encouragement of effective peer review. *See Brownwood Regional,* 927 S.W.2d at 27. It is not for the courts to disturb that balance or to fashion exceptions to the statutes absent constitutional concerns. *See Irving Healthcare,* 927 S.W.2d at 17.

Thus, Grochocki's affidavit, when viewed with the *in camera* documents, sufficiently establishes that those documents are records and proceedings of a hospital committee or peer review committee and hence, are privileged. *See* Article 4495(b) § 5.06(j), (s)(3); *see also Jordan,* 701 S.W.2d at 648. The burden was therefore on the real parties to offer controverting proof. *See Methodist Hosp.,* 982 S.W.2d at 114. Here, the real parties did not controvert or otherwise object to Grochocki's affidavit nor did they argue or present proof that the hospital committee or peer review committee privilege was waived or inapplicable.[2] In the absence of such proof, we hold that the trial court clearly abused its discretion in ordering

---

2. The real parties filed a response acknowledging they had not reviewed the documents, but nevertheless suggested reasons why the privilege was waived or inapplicable. A re-

view of the documents and the Grochocki affidavit confirms the absence of waiver or any other basis for defeating the privilege.

relator to produce the documents in question. Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to vacate the portion of its May 19, 1999, order requiring relator to produce documents responsive to request for production number twenty three. The writ will issue if the court fails to comply.