NUMBER 13-11-00058-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF
TEXAS

 

CORPUS CHRISTI - EDINBURG

                                                                     


 

IN RE RIO GRANDE REGIONAL
HOSPITAL

                                                                     


 

On Petition for Writ of
Mandamus.

                                                                     


 

MEMORANDUM OPINION

 

Before Justices Garza,
Benavides, and Vela

Memorandum Opinion Per
Curiam

 

Relator,
Rio Grande Regional Hospital (the “Hospital”), has filed a petition for writ of
mandamus contending that respondent, the Honorable Roberto “Bobby” Flores, presiding
judge of the 139th District Court of Hidalgo County, Texas, abused his discretion
by compelling the Hospital to release certain allegedly privileged documents to
counsel for plaintiffs in the underlying cause, trial court cause number C-349-09-C,
styled Francisco Dimas and Norma Benitez Dimas, as next friends of Nemesio
Dimas, a Minor v. Mariano Salinas, M.D.  We conditionally grant the writ.

 

I.  Background

The underlying cause, a health care liability
suit, was filed on February 6, 2009 by Francisco Dimas and Norma Benitez Dimas,
as next friends of their minor son Nemesio Dimas, against Mariano Salinas, M.D. 
See Salinas v. Dimas, 310 S.W.3d 106, 110-11 (Tex. App.–Corpus Christi 2010,
pet. denied) (holding, in an interlocutory appeal brought by Dr. Salinas, that “there
is nothing in the applicable rules or statutes prohibiting a health care liability
claimant from serving an expert medical report on a defendant prior to that defendant
having answered the lawsuit”).  The Dimases’ original petition alleged that Dr.
Salinas “committed acts and/or omissions of negligence and gross negligence in connection
with” the obstetrical care and treatment of Norma, and that his negligence caused
Nemesio to sustain “physical pain, past and probable future physical impairment,
past and probable future disfigurement, past and probable future mental anguish,
and probable future loss of earning capacity . . . .”  Id. at 107.

On October 7, 2009, the Hospital, a non-party
to the underlying suit, received a subpoena from the Dimases requesting the production
of:  (1) “[a]ll paper and electronic correspondence” between the Hospital and Dr.
Salinas; and (2) “[a]ll certificates of insurance[] which were issued to or for
the benefit of” Dr. Salinas.  The Hospital then filed a motion for protective order
alleging that the requested documents are privileged and asking the trial court
to quash the subpoena.  The Hospital specifically argued that the documents are
protected from disclosure by the medical committee privilege, see Tex. Health & Safety Code Ann. §§ 161.031-.033
(Vernon 2010), and the medical peer review committee privilege, see Tex. Occ. Code Ann. § 160.007 (Vernon 2004).[1]

In support of this argument, the Hospital
produced, for in camera inspection by the trial court, exactly one thousand
pages of documents that it claimed would be responsive to the subpoena but were
withheld from the Dimases’ counsel on grounds that they were privileged.  The Hospital
also furnished a “privilege log” purporting to detail the nature of the documents
and stating which privilege was being claimed with respect to each of the documents. 
See Tex. R. Civ. P. 193.3. 
The privilege log was accompanied by the affidavit of Yolanda Cavazos, the Hospital’s
director of medical staff affairs, who stated that she is responsible for “maintaining
the [Hospital’s] physician credentials files and the documents generated as part
of the medical staff peer review processes.”  Cavazos explained that, out of the
documents provided to the trial court for in camera inspection, pages one
through 618 “were gathered or prepared solely for use in the hospital’s credentialing
process” and represent the Hospital’s “credentials file” for Dr. Salinas, while
pages 619 through 1000 represent the Hospital’s “peer review file” for Dr. Salinas.[2]

In response, the Dimases claimed that the
Hospital’s privilege log “does not disclose enough about the referenced documents
or the committees in question, to permit a reader to confirm the validity of the
privileges claimed” and that, therefore, “a review of the documents by the Court
is necessary for the Court to be able properly to rule upon the subject privilege
claims.”  The Dimases further argued that:

In order to determine
the validity of the subject privilege claims, the Court would also need to be presented
with evidence of the identities of the members of the committees in question, as
of the times when the documents are shown to have been transmitted by or to such
committee members. . . .  Such evidence is not contained in the subject motion,
privilege log, affidavit of Ms. Cavazos, or exhibits to Ms. Cavazos’[s] affidavit. 
Therefore, unless the Court were able to determine from the documents being withheld
from production . . . which persons were members of which committees and when, the
Court must overrule the subject privilege claims.

 

After reviewing the allegedly privileged
documents in camera, the trial court rendered a written order on December
15, 2010, stating that:  (1) “The documents submitted to the Court for in camera
review shall be released to counsel for Plaintiffs”; and (2) “Counsel for Plaintiffs
shall not publish any of such documents, or their contents, without further order
of the Court.”  This original proceeding followed.

II.  Standard of Review

Mandamus will issue to correct a clear abuse
of discretion for which the remedy by appeal is inadequate.  In re Prudential
Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004).  A trial court abuses its
discretion when it acts in an unreasonable or arbitrary manner, when it acts without
reference to guiding rules and principles, or when it clearly fails to analyze or
apply the law correctly.  See Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992); Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).  A
party does not have an adequate remedy at law when an appellate court cannot cure
a trial court’s erroneous discovery order.  Arlington Mem’l Hosp. Found. v. Barton,
952 S.W.2d 927, 929 (Tex. App.–Fort Worth 1997, orig. proceeding) (citing Walker,
827 S.W.2d at 843).  An appellate court cannot cure the error when a trial court
erroneously orders disclosure of privileged information that materially affects
the rights of the aggrieved party.  Id.

III.  Applicable Law

In general, the burden to establish a privilege
is on the party seeking to shield information from discovery.  Id. (citing
Goodspeed v. Street, 747 S.W.2d 526, 530 (Tex. App.–Fort Worth 1988, orig.
proceeding)).  A party withholding material from discovery and asserting a privilege
must, within fifteen days of a request by the opposing party, (1) describe the materials
withheld in a way that “enables other parties to assess the applicability of the
privilege,” and (2) “assert[] a specific privilege for each item or group of items
withheld.”  Tex. R. App. P. 193.3(b). 
The withholding party must also produce affidavits[3]
or testimony to support the privilege, and it must produce the documents themselves
if the trial court determines an in camera review is necessary.  See
Tex. R. Civ. P. 193.3(a); Peeples
v. Hon. Fourth Supreme Judicial Dist., 701 S.W.2d 635, 637 (Tex. 1985) (orig.
proceeding); see also In re Harco Nat’l Ins. Co., No. 02-09-00351-CV, 2010
Tex. App. LEXIS 4899, at *7 (Tex. App.–Fort Worth June 24, 2010, orig.
proceeding) (mem. op.).  Once the party resisting discovery establishes a prima
facie case that the documents are privileged, the burden shifts to the discovering
party to refute the privilege claim.  See In re WHMC, 996 S.W.2d 409,
411 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding); In re Methodist
Hosp., 982 S.W.2d 112, 114 (Tex. App.–Houston [1st Dist.] 1998, orig. proceeding);
Arlington Mem’l Hosp. Found., 952 S.W.2d at 930; Marathon Oil Co. v. Moye,
893 S.W.2d 585, 591 (Tex. App.–Dallas 1994, orig. proceeding); see also In re
Harco Nat’l Ins. Co., 2010 Tex. App. LEXIS 4899, at *7.  “The prima facie
standard requires only the ‘minimum quantum of evidence necessary to support a
rational inference that the allegation of fact is true.’”  In re DuPont de
Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (quoting
Tex. Tech Univ. Health Scis. Ctr. v. Apodaca, 876 S.W.2d 402, 407 (Tex.
App.–El Paso 1994, writ denied)).

The specific privileges being claimed by
the Hospital in the instant case are the medical committee privilege, set forth
in the Texas Health and Safety Code, and the medical peer review committee privilege,
set forth in the Texas Occupations Code.  See Tex. Health & Safety Code Ann. § 161.032(a) (“The records
and proceedings of a medical committee[[4]]
are confidential and are not subject to court subpoena.”); Tex. Occ. Code Ann. § 160.007(a) (“[E]ach
proceeding or record of a medical peer review committee[[5]]
is confidential, and any communication made to a medical peer review committee is
privileged.”).[6] 
In particular, the occupations code provides that:

Unless disclosure is required
or authorized by law, a record or determination of or a communication to a medical
peer review committee is not subject to subpoena or discovery and is not admissible
as evidence in any civil judicial or administrative proceeding without waiver of
the privilege of confidentiality executed in writing by the committee. . . .  A
person seeking access to privileged information must plead and prove waiver of the
privilege. . . .

 

Tex. Occ. Code Ann. § 160.007(e),
(g).  Neither privilege is applicable to “records made or maintained in the regular
course of business by a hospital, health maintenance organization, medical organization,
university medical center or health science center, hospital district, hospital
authority, or extended care facility.”  Tex.
Health & Safety Code Ann. § 161.032(f).

III.  Analysis

The Hospital argues that it established a
prima facie case that the documents at issue are privileged, and, because the Dimases
produced no evidence refuting that case, the trial court abused its discretion in
failing to grant the Hospital’s requested protective order.  We agree.

The Dimases’ argument in opposition to the
motion for protective order was essentially that the Hospital’s privilege log and
Cavazos’s affidavit provided insufficient information to establish (1) that the
documents were privileged or (2) that the privilege had not been waived.  However,
Cavazos stated in her affidavit that all of the documents were used in the credentialing
and peer review process with respect to Dr. Salinas, and that none of the documents
were “made in the regular course of the Hospital’s business in that they are not
part of the daily care of patients and are not maintained with the medical, business,
or financial records of the Hospital.”  Cavazos also specifically detailed the Hospital’s
initial credentialing and peer review processes and incorporated the by-laws governing
the Hospital’s medical staff and Board of Trustees.  Cavazos’s affidavit, along
with the in camera inspection of documents and the privilege log providing
details as to the general nature of the withheld documents, were sufficient to establish
a prima facie case that the documents were indeed privileged.  See Mem’l Hosp.-The
Woodlands v. McCown, 927 S.W.2d 1, 11-12 (Tex. 1996) (orig. proceeding) (finding
that “detailed affidavits” and in camera documents satisfied hospital’s burden
of proving peer review privilege); Arlington Mem’l Hosp. Found., 952 S.W.2d
at 930 (finding that affidavit stating in part that withheld documents were “records
and proceedings of the peer review committees” at hospital, together with production
of documents for in camera inspection, “sufficiently raise[d] and prove[d]
the peer-review privilege”); Ne. Cmty. Hosp. v. Gregg, 815 S.W.2d 320, 323
(Tex. App.–Fort Worth 1991, orig. proceeding) (holding that affidavit that tracked
peer review privilege statute, combined with copies of the documents, established
peer review privilege).

With respect to any potential waiver of the
privileges, Cavazos further stated as follows:

Part of my job duties
is protecting the confidentiality of the documents generated by the Credentials
Committee, the Quality/Peer Review Committee, and the Medical Executive Committee. 
All of those files are maintained in my office in a locked cabinet.  I am the only
individual with the key to that cabinet and I do not provide any unauthorized access
to those documents.  The privileged documents that I maintain are not maintained
with other Hospital documents relating to the physicians.

 

.
. . .

 

As part of my job duties
of protecting the confidentiality of these files, I would be aware of any waiver
of the confidentiality of these documents.  It is my understanding that the only
way to waive the confidentiality of the credentialing and peer review records is
for the Medical Executive Committee to agree in writing to such waiver.  To date,
no waiver has been executed regarding Dr. Salinas’[s] credentialing or peer review
files.

 

The Dimases argue that this statement is insufficient to establish
that the privileges had not been waived, because Cavazos was incorrect in stating
that “the only way to waive the confidentiality of the credentialing and peer review
records is for the Medical Executive Committee to agree in writing to such waiver.” 
They argue that waiver may also be accomplished by voluntary disclosure of the documents.

We disagree that Cavazos’s affidavit is insufficient
in this regard.  We note first that the burden is on the party seeking material
protected by the peer review privilege to plead and prove that the privilege has
been waived.  See Tex. Occ. Code Ann.
§ 160.007(g).  It was therefore not the responsibility of the Hospital to establish
that the peer review privilege was not waived; instead, the burden was on
the Dimases to produce evidence indicating that a waiver did take place. 
Second, while it is true that the general medical committee privilege found in the
health and safety code may be waived by voluntary disclosure of the privileged documents,
see, e.g., Jordan v. Court of Appeals for Fourth Supreme Judicial District,
701 S.W.2d 644, 649 (Tex. 1985), the peer review privilege explicitly requires a
written waiver executed by the committee.  Tex.
Occ. Code Ann. § 160.007(e).  And, the Texas Supreme Court has held that
information relating to initial credentialing—such the Hospital’s credentials file
on Dr. Salinas—is protected by the peer review committee privilege.  McCown,
927 S.W.2d at 7-8 (holding that the peer review committee privilege is not limited
to peer review evaluations of “events that have already occurred at the hospital,”
but also extends to documents related to initial credentialing).  Cavazos stated
that “no waiver has been executed regarding Dr. Salinas’[s] credentialing or peer
review files,” thereby establishing a prima facie case that no waiver of the privilege
had occurred with respect to any of the documents at issue.[7]

Cavazos’s affidavit, combined with the privilege
log and in camera document production, established a prima facie case that
the documents at issue were not discoverable.  The burden then shifted to the Dimases
to either controvert that proof, show that the privilege was waived, or show
that the documents were made in the ordinary course of business.  See In
re WHMC, 996 S.W.2d at 411; In re Methodist Hosp., 982 S.W.2d at 114;
Arlington Mem’l Hosp. Found., 952 S.W.2d at 930; Marathon Oil Co.,
893 S.W.2d at 591; see also In re Harco Nat’l Ins. Co., 2010 Tex. App. LEXIS
4899, at *7.  The Dimases did not meet that burden.  There was nothing
preventing the Dimases from conducting discovery as to the privilege issue—for
example, they could have propounded interrogatories upon Cavazos or other third
parties asking for additional information about the documents at issue, see In
re DuPont de Nemours & Co., 136 S.W.3d at 226 n.4—but, ultimately, they
produced no evidence indicating that the privileges are inapplicable.[8] 
Accordingly, the Hospital proved as a matter of law that the documents at issue
are privileged, and the trial court erred by not granting the protective order.

IV.  Conclusion

We conditionally grant the Hospital’s petition
for writ of mandamus and hereby direct the trial court to:  (1) withdraw its
order of December 15, 2010; and (2) render an order granting the Hospital’s
motion for protective order.  The writ will issue only if the trial court fails
to comply with our directive.

 

                                                                                                PER
CURIAM

 

Delivered
and filed the

14th
day of March, 2011.









[1] The Hospital also argued that the
Dimases were “procedurally barred from conducting discovery against the
Hospital” because the Hospital was not named as a defendant in the lawsuit.

 





[2] Cavazos explained the Hospital’s
credentialing and peer review processes as follows:

 

Credentialing
is the process of reviewing, verifying, and evaluating a physician’s
qualifications in determining whether a physician is qualified to be appointed
to the Hospital’s medical staff and to be granted clinical privileges to
exercise at the Hospital.  This process involves a review of the physician’s
credentials, including the primary source verification of the doctor’s
education, training, experience, certification, licensure and other
professional qualifications prior to the physician’s appointment (or
reappointment) to the Medical Staff at [the] Hospital.  The review also
includes the gathering of additional information regarding the physician.  The
Medical Executive Committee, with the assistance of the Department Chairs,
Credentials Committee, and members of the Medical Executive Committee, makes
recommendations concerning initial applications, reappointment applications,
membership status changes, and additional clinical privileges requests to the
Board of Trustees.

               

.
. . .

                                                                                           

Peer review is
conducted when the clinical competence or conduct of any medical staff
practitioner is brought into question.  While peer review can include an
analysis and review of an adverse or unexpected patient outcome, peer review
can also be triggered by other events, such as the receipt of patient, family,
medical staff, or hospital staff complaints; identified quality trends; or risk
management issues.  Part of the goal of peer review is for practitioners to
gain feedback for personal development and improvement related to their
professional, technical, and interpersonal skills in providing patient care and
thereby improve the delivery and quality of care by those physicians at the
Hospital.  The Quality/Peer Review Committee . . . acting under the Medical
Executive Committee acts as the oversight committee for the purposes of peer
review.

 

Attached to Cavazos’s affidavit were
copies of the Hospital’s medical staff by-laws and by-laws governing the
Hospital’s Board of Trustees, which substantiated her statements.

 





[3] An affidavit proving the privilege
“must necessarily be descriptive enough to be persuasive, but not so descriptive
as to provide the very information sought by the opposing party, should the
affidavit fall into such party’s hands.”  Arlington Mem’l Hosp. Found. v.
Barton, 952 S.W.2d 927, 929 (Tex. App.–Fort Worth 1997, orig. proceeding)
(citing Randall E. Butler, Records and Proceedings of Hospital Committees
Privileged Against Discovery, 28 S.
Tex. L. Rev. 97, 108 (1987)).

 





[4] The term “medical committee” includes
“any committee . . . of . . . a hospital . . . .”  Tex. Health & Safety Code Ann. § 161.031(a)(1) (Vernon 2010).

 





[5] The statute defines “[m]edical peer
review” as “the evaluation of medical and health care services, including
evaluation of the qualifications and professional conduct of professional
health care practitioners and of patient care provided by those
practitioners.”  Tex. Occ. Code Ann.
§ 151.002(a)(7) (Vernon Supp. 2010).  “Medical peer review committee” is
defined as:

 

a committee of
a health care entity, the governing board of a health care entity, or the
medical staff of a health care entity, that operates under written bylaws
approved by the policy-making body or the governing board of the health care entity
and is authorized to evaluate the quality of medical and health care services
or the competence of physicians . . . .

 

Id. § 151.002(a)(8).

 





[6] In 1996, the Texas Supreme Court
described the policy underlying these privileges:

 

Generally
speaking, statutes such as section 5.06 of the Medical Practice Act [now
codified in the occupations code] and sections 161.031-161.033 of the Texas
Health and Safety Code are based on two premises:  first, that exacting
critical analysis of the competence and performance of physicians and other
health-care providers by their peers will result in improved standards of
medical care; and second, that an atmosphere of confidentiality is required for
candid, uninhibited communication of such critical analysis within the medical
profession.

 

Mem’l Hosp.-The Woodlands v. McCown, 927 S.W.2d 1, 3 (Tex. 1996) (citing Griffith & Parker, With Malice
Toward None: The Metamorphosis of Statutory and Common Law Protections
for Physicians and Hospitals in Negligent Credentialing Litigation, 22 Tex. Tech L. Rev. 157, 158-59 (1991);
Creech, Comment, The Medical Review Committee Privilege: A Jurisdictional
Survey, 67 N.C. L. Rev. 179,
179 (1988)).





[7] Arguably, even if the credentials
file was protected only by the general medical committee privilege, and not the
peer review privilege, the burden was still on the Dimases to produce evidence
of any waiver.  See In re WHMC, 996 S.W.2d 409, 411 (Tex. App.–Houston
[14th Dist.] 1999, orig. proceeding) (citing In re Methodist Hosp., 982
S.W.2d 112, 114 (Tex. App.–Houston [1st Dist.] 1998, orig. proceeding)) (“If
the party asserting a medical records privilege submits sufficient proof, the
burden shifts to the other party to either controvert that proof, show that
the privilege was waived, or show that the documents were made in the
ordinary course of business.” (Emphasis added.)); cf. Jordan v. Court of
Appeals for Fourth Supreme Judicial Dist., 701 S.W.2d 644, 649 (Tex. 1985)
(“If the matter for which a privilege is sought has been disclosed to a third
party, thus raising the question of waiver of the privilege, the party
asserting the privilege has the burden of proving that no waiver has occurred.”).

 





[8] According to the Hospital, the trial
court held a hearing on its motion for protective order on September 2, 2010. 
However, there is no record of the hearing before this Court.