

# NUMBER 13-11-00058-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE RIO GRANDE REGIONAL HOSPITAL

### On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion Per Curiam

Relator, Rio Grande Regional Hospital (the "Hospital"), has filed a petition for writ of mandamus contending that respondent, the Honorable Roberto "Bobby" Flores, presiding judge of the 139th District Court of Hidalgo County, Texas, abused his discretion by compelling the Hospital to release certain allegedly privileged documents to counsel for plaintiffs in the underlying cause, trial court cause number C-349-09-C, styled *Francisco Dimas and Norma Benitez Dimas, as next friends of Nemesio Dimas, a Minor v. Mariano Salinas, M.D.* We conditionally grant the writ.

## I. BACKGROUND

The underlying cause, a health care liability suit, was filed on February 6, 2009 by Francisco Dimas and Norma Benitez Dimas, as next friends of their minor son Nemesio Dimas, against Mariano Salinas, M.D. *See Salinas v. Dimas*, 310 S.W.3d 106, 110-11 (Tex. App.–Corpus Christi 2010, pet. denied) (holding, in an interlocutory appeal brought by Dr. Salinas, that "there is nothing in the applicable rules or statutes prohibiting a health care liability claimant from serving an expert medical report on a defendant prior to that defendant having answered the lawsuit"). The Dimases' original petition alleged that Dr. Salinas "committed acts and/or omissions of negligence and gross negligence in connection with" the obstetrical care and treatment of Norma, and that his negligence caused Nemesio to sustain "physical pain, past and probable future physical impairment, past and probable future disfigurement, past and probable future mental anguish, and probable future loss of earning capacity . . . ." *Id.* at 107.

On October 7, 2009, the Hospital, a non-party to the underlying suit, received a subpoena from the Dimases requesting the production of: (1) "[a]ll paper and electronic correspondence" between the Hospital and Dr. Salinas; and (2) "[a]ll certificates of insurance[] which were issued to or for the benefit of" Dr. Salinas. The Hospital then filed a motion for protective order alleging that the requested documents are privileged and asking the trial court to quash the subpoena. The Hospital specifically argued that the documents are protected from disclosure by the medical committee privilege, *see* TEX. HEALTH & SAFETY CODE ANN. §§ 161.031-.033 (Vernon 2010), and the medical peer review committee privilege, *see* TEX. OCC. CODE ANN. § 160.007 (Vernon 2004).[1]

---

[1] The Hospital also argued that the Dimases were "procedurally barred from conducting discovery

2

In support of this argument, the Hospital produced, for *in camera* inspection by the trial court, exactly one thousand pages of documents that it claimed would be responsive to the subpoena but were withheld from the Dimases' counsel on grounds that they were privileged. The Hospital also furnished a "privilege log" purporting to detail the nature of the documents and stating which privilege was being claimed with respect to each of the documents. *See* TEX. R. CIV. P. 193.3. The privilege log was accompanied by the affidavit of Yolanda Cavazos, the Hospital's director of medical staff affairs, who stated that she is responsible for "maintaining the [Hospital's] physician credentials files and the documents generated as part of the medical staff peer review processes." Cavazos explained that, out of the documents provided to the trial court for *in camera* inspection, pages one through 618 "were gathered or prepared solely for use in the hospital's credentialing process" and represent the Hospital's "credentials file" for Dr. Salinas, while pages 619 through 1000 represent the Hospital's "peer review file" for Dr. Salinas.[2]

_____

against the Hospital" because the Hospital was not named as a defendant in the lawsuit.

[2] Cavazos explained the Hospital's credentialing and peer review processes as follows:

Credentialing is the process of reviewing, verifying, and evaluating a physician's qualifications in determining whether a physician is qualified to be appointed to the Hospital's medical staff and to be granted clinical privileges to exercise at the Hospital. This process involves a review of the physician's credentials, including the primary source verification of the doctor's education, training, experience, certification, licensure and other professional qualifications prior to the physician's appointment (or reappointment) to the Medical Staff at [the] Hospital. The review also includes the gathering of additional information regarding the physician. The Medical Executive Committee, with the assistance of the Department Chairs, Credentials Committee, and members of the Medical Executive Committee, makes recommendations concerning initial applications, reappointment applications, membership status changes, and additional clinical privileges requests to the Board of Trustees.

. . . .

Peer review is conducted when the clinical competence or conduct of any medical staff practitioner is brought into question. While peer review can include an analysis and review of an adverse or unexpected patient outcome, peer review can also be triggered by

In response, the Dimases claimed that the Hospital's privilege log "does not disclose enough about the referenced documents or the committees in question, to permit a reader to confirm the validity of the privileges claimed" and that, therefore, "a review of the documents by the Court is necessary for the Court to be able properly to rule upon the subject privilege claims." The Dimases further argued that:

> In order to determine the validity of the subject privilege claims, the Court would also need to be presented with evidence of the identities of the members of the committees in question, as of the times when the documents are shown to have been transmitted by or to such committee members. . . . Such evidence is not contained in the subject motion, privilege log, affidavit of Ms. Cavazos, or exhibits to Ms. Cavazos'[s] affidavit. Therefore, unless the Court were able to determine from the documents being withheld from production . . . which persons were members of which committees and when, the Court must overrule the subject privilege claims.

After reviewing the allegedly privileged documents *in camera*, the trial court rendered a written order on December 15, 2010, stating that: (1) "The documents submitted to the Court for *in camera* review shall be released to counsel for Plaintiffs"; and (2) "Counsel for Plaintiffs shall not publish any of such documents, or their contents, without further order of the Court." This original proceeding followed.

## II. STANDARD OF REVIEW

Mandamus will issue to correct a clear abuse of discretion for which the remedy by

---

other events, such as the receipt of patient, family, medical staff, or hospital staff complaints; identified quality trends; or risk management issues. Part of the goal of peer review is for practitioners to gain feedback for personal development and improvement related to their professional, technical, and interpersonal skills in providing patient care and thereby improve the delivery and quality of care by those physicians at the Hospital. The Quality/Peer Review Committee . . . acting under the Medical Executive Committee acts as the oversight committee for the purposes of peer review.

Attached to Cavazos's affidavit were copies of the Hospital's medical staff by-laws and by-laws governing the Hospital's Board of Trustees, which substantiated her statements.

appeal is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner, when it acts without reference to guiding rules and principles, or when it clearly fails to analyze or apply the law correctly. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A party does not have an adequate remedy at law when an appellate court cannot cure a trial court's erroneous discovery order. *Arlington Mem'l Hosp. Found. v. Barton*, 952 S.W.2d 927, 929 (Tex. App.–Fort Worth 1997, orig. proceeding) (citing *Walker*, 827 S.W.2d at 843). An appellate court cannot cure the error when a trial court erroneously orders disclosure of privileged information that materially affects the rights of the aggrieved party. *Id.*

## III. APPLICABLE LAW

In general, the burden to establish a privilege is on the party seeking to shield information from discovery. *Id.* (citing *Goodspeed v. Street*, 747 S.W.2d 526, 530 (Tex. App.–Fort Worth 1988, orig. proceeding)). A party withholding material from discovery and asserting a privilege must, within fifteen days of a request by the opposing party, (1) describe the materials withheld in a way that "enables other parties to assess the applicability of the privilege," and (2) "assert[] a specific privilege for each item or group of items withheld." TEX. R. APP. P. 193.3(b). The withholding party must also produce affidavits[3] or testimony to support the privilege, and it must produce the documents

---

[3] An affidavit proving the privilege "must necessarily be descriptive enough to be persuasive, but not so descriptive as to provide the very information sought by the opposing party, should the affidavit fall into such party's hands." *Arlington Mem'l Hosp. Found. v. Barton*, 952 S.W.2d 927, 929 (Tex. App.–Fort Worth 1997, orig. proceeding) (citing Randall E. Butler, *Records and Proceedings of Hospital Committees Privileged Against Discovery*, 28 S. TEX. L. REV. 97, 108 (1987)).

themselves if the trial court determines an *in camera* review is necessary. *See* TEX. R. CIV. P. 193.3(a); *Peeples v. Hon. Fourth Supreme Judicial Dist.*, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding); *see also In re Harco Nat'l Ins. Co.*, No. 02-09-00351-CV, 2010 Tex. App. LEXIS 4899, at *7 (Tex. App.–Fort Worth June 24, 2010, orig. proceeding) (mem. op.). Once the party resisting discovery establishes a prima facie case that the documents are privileged, the burden shifts to the discovering party to refute the privilege claim. *See In re WHMC*, 996 S.W.2d 409, 411 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding); *In re Methodist Hosp.*, 982 S.W.2d 112, 114 (Tex. App.–Houston [1st Dist.] 1998, orig. proceeding); *Arlington Mem'l Hosp. Found.*, 952 S.W.2d at 930; *Marathon Oil Co. v. Moye*, 893 S.W.2d 585, 591 (Tex. App.–Dallas 1994, orig. proceeding); *see also In re Harco Nat'l Ins. Co.*, 2010 Tex. App. LEXIS 4899, at *7. "The prima facie standard requires only the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *In re DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (quoting *Tex. Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.–El Paso 1994, writ denied)).

The specific privileges being claimed by the Hospital in the instant case are the medical committee privilege, set forth in the Texas Health and Safety Code, and the medical peer review committee privilege, set forth in the Texas Occupations Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.032(a) ("The records and proceedings of a medical committee[4] are confidential and are not subject to court subpoena."); TEX. OCC.

---

[4] The term "medical committee" includes "any committee . . . of . . . a hospital . . . ." TEX. HEALTH & SAFETY CODE ANN. § 161.031(a)(1) (Vernon 2010).

6

CODE ANN. § 160.007(a) ("[E]ach proceeding or record of a medical peer review

committee[5] is confidential, and any communication made to a medical peer review

committee is privileged.").[6]   In particular, the occupations code provides that:

> Unless disclosure is required or authorized by law, a record or
> determination of or a communication to a medical peer review committee is
> not subject to subpoena or discovery and is not admissible as evidence in
> any civil judicial or administrative proceeding without waiver of the privilege
> of confidentiality executed in writing by the committee. . . .   A person
> seeking access to privileged information must plead and prove waiver of the
> privilege. . . .

TEX. OCC. CODE ANN. § 160.007(e), (g).   Neither privilege is applicable to "records made

or maintained in the regular course of business by a hospital, health maintenance

organization, medical organization, university medical center or health science center,

hospital district, hospital authority, or extended care facility."   TEX. HEALTH & SAFETY

---

[5] The statute defines "[m]edical peer review" as "the evaluation of medical and health care services, including evaluation of the qualifications and professional conduct of professional health care practitioners and of patient care provided by those practitioners."   TEX. OCC. CODE ANN. § 151.002(a)(7) (Vernon Supp. 2010).   "Medical peer review committee" is defined as:

> a committee of a health care entity, the governing board of a health care entity, or the
> medical staff of a health care entity, that operates under written bylaws approved by the
> policy-making body or the governing board of the health care entity and is authorized to
> evaluate the quality of medical and health care services or the competence of
> physicians . . . .

*Id.* § 151.002(a)(8).

[6] In 1996, the Texas Supreme Court described the policy underlying these privileges:

> Generally speaking, statutes such as section 5.06 of the Medical Practice Act [now codified
> in the occupations code] and sections 161.031-161.033 of the Texas Health and Safety
> Code are based on two premises:   first, that exacting critical analysis of the competence
> and performance of physicians and other health-care providers by their peers will result in
> improved standards of medical care; and second, that an atmosphere of confidentiality is
> required for candid, uninhibited communication of such critical analysis within the medical
> profession.

*Mem'l Hosp.-The Woodlands v. McCown*, 927 S.W.2d 1, 3 (Tex. 1996) (citing Griffith & Parker, *With Malice Toward None: The Metamorphosis of Statutory and Common Law Protections for Physicians and Hospitals in Negligent Credentialing Litigation*, 22 TEX. TECH L. REV. 157, 158-59 (1991); Creech, Comment, *The Medical Review Committee Privilege: A Jurisdictional Survey*, 67 N.C. L. REV. 179, 179 (1988)).

CODE ANN. § 161.032(f).

### III. ANALYSIS

The Hospital argues that it established a prima facie case that the documents at issue are privileged, and, because the Dimases produced no evidence refuting that case, the trial court abused its discretion in failing to grant the Hospital's requested protective order. We agree.

The Dimases' argument in opposition to the motion for protective order was essentially that the Hospital's privilege log and Cavazos's affidavit provided insufficient information to establish (1) that the documents were privileged or (2) that the privilege had not been waived. However, Cavazos stated in her affidavit that all of the documents were used in the credentialing and peer review process with respect to Dr. Salinas, and that none of the documents were "made in the regular course of the Hospital's business in that they are not part of the daily care of patients and are not maintained with the medical, business, or financial records of the Hospital." Cavazos also specifically detailed the Hospital's initial credentialing and peer review processes and incorporated the by-laws governing the Hospital's medical staff and Board of Trustees. Cavazos's affidavit, along with the *in camera* inspection of documents and the privilege log providing details as to the general nature of the withheld documents, were sufficient to establish a prima facie case that the documents were indeed privileged. *See Mem'l Hosp.-The Woodlands v. McCown*, 927 S.W.2d 1, 11-12 (Tex. 1996) (orig. proceeding) (finding that "detailed affidavits" and *in camera* documents satisfied hospital's burden of proving peer review privilege); *Arlington Mem'l Hosp. Found.*, 952 S.W.2d at 930 (finding that affidavit stating

8

in part that withheld documents were "records and proceedings of the peer review committees" at hospital, together with production of documents for *in camera* inspection, "sufficiently raise[d] and prove[d] the peer-review privilege"); *Ne. Cmty. Hosp. v. Gregg*, 815 S.W.2d 320, 323 (Tex. App.–Fort Worth 1991, orig. proceeding) (holding that affidavit that tracked peer review privilege statute, combined with copies of the documents, established peer review privilege).

With respect to any potential waiver of the privileges, Cavazos further stated as follows:

> Part of my job duties is protecting the confidentiality of the documents generated by the Credentials Committee, the Quality/Peer Review Committee, and the Medical Executive Committee. All of those files are maintained in my office in a locked cabinet. I am the only individual with the key to that cabinet and I do not provide any unauthorized access to those documents. The privileged documents that I maintain are not maintained with other Hospital documents relating to the physicians.
>
> . . . .
>
> As part of my job duties of protecting the confidentiality of these files, I would be aware of any waiver of the confidentiality of these documents. It is my understanding that the only way to waive the confidentiality of the credentialing and peer review records is for the Medical Executive Committee to agree in writing to such waiver. To date, no waiver has been executed regarding Dr. Salinas'[s] credentialing or peer review files.

The Dimases argue that this statement is insufficient to establish that the privileges had not been waived, because Cavazos was incorrect in stating that "the only way to waive the confidentiality of the credentialing and peer review records is for the Medical Executive Committee to agree in writing to such waiver." They argue that waiver may also be accomplished by voluntary disclosure of the documents.

We disagree that Cavazos's affidavit is insufficient in this regard. We note first

9

that the burden is on the party seeking material protected by the peer review privilege to plead and prove that the privilege has been waived. *See* TEX. OCC. CODE ANN. § 160.007(g). It was therefore not the responsibility of the Hospital to establish that the peer review privilege was *not* waived; instead, the burden was on the Dimases to produce evidence indicating that a waiver *did* take place. Second, while it is true that the general medical committee privilege found in the health and safety code may be waived by voluntary disclosure of the privileged documents, *see, e.g., Jordan v. Court of Appeals for Fourth Supreme Judicial District*, 701 S.W.2d 644, 649 (Tex. 1985), the peer review privilege explicitly requires a written waiver executed by the committee. TEX. OCC. CODE ANN. § 160.007(e). And, the Texas Supreme Court has held that information relating to initial credentialing—such the Hospital's credentials file on Dr. Salinas—is protected by the peer review committee privilege. *McCown*, 927 S.W.2d at 7-8 (holding that the peer review committee privilege is not limited to peer review evaluations of "events that have already occurred at the hospital," but also extends to documents related to initial credentialing). Cavazos stated that "no waiver has been executed regarding Dr. Salinas'[s] credentialing or peer review files," thereby establishing a prima facie case that no waiver of the privilege had occurred with respect to any of the documents at issue.[7]

Cavazos's affidavit, combined with the privilege log and *in camera* document

---

[7] Arguably, even if the credentials file was protected only by the general medical committee privilege, and not the peer review privilege, the burden was still on the Dimases to produce evidence of any waiver. *See In re WHMC*, 996 S.W.2d 409, 411 (Tex. App.–Houston [14th Dist.] 1999, orig. proceeding) (citing *In re Methodist Hosp.*, 982 S.W.2d 112, 114 (Tex. App.–Houston [1st Dist.] 1998, orig. proceeding)) ("If the party asserting a medical records privilege submits sufficient proof, the burden shifts to the other party to either controvert that proof, *show that the privilege was waived*, or show that the documents were made in the ordinary course of business." (Emphasis added.)); *cf. Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 649 (Tex. 1985) ("If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred.").

production, established a prima facie case that the documents at issue were not discoverable. The burden then shifted to the Dimases to either controvert that proof, show that the privilege was waived, or show that the documents were made in the ordinary course of business. *See In re WHMC*, 996 S.W.2d at 411; *In re Methodist Hosp.*, 982 S.W.2d at 114; *Arlington Mem'l Hosp. Found.*, 952 S.W.2d at 930; *Marathon Oil Co.*, 893 S.W.2d at 591; *see also In re Harco Nat'l Ins. Co.*, 2010 Tex. App. LEXIS 4899, at *7. The Dimases did not meet that burden. There was nothing preventing the Dimases from conducting discovery as to the privilege issue—for example, they could have propounded interrogatories upon Cavazos or other third parties asking for additional information about the documents at issue, *see In re DuPont de Nemours & Co.*, 136 S.W.3d at 226 n.4—but, ultimately, they produced no evidence indicating that the privileges are inapplicable.[8] Accordingly, the Hospital proved as a matter of law that the documents at issue are privileged, and the trial court erred by not granting the protective order.

## IV. CONCLUSION

We conditionally grant the Hospital's petition for writ of mandamus and hereby direct the trial court to: (1) withdraw its order of December 15, 2010; and (2) render an order granting the Hospital's motion for protective order. The writ will issue only if the trial court fails to comply with our directive.

PER CURIAM

Delivered and filed the
14th day of March, 2011.

---

[8] According to the Hospital, the trial court held a hearing on its motion for protective order on September 2, 2010. However, there is no record of the hearing before this Court.

11